UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:19-cr-00001-TJC-PDB

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

v.

**JOHN R. NETTLETON,**
    **Defendant.**
_____/

## MOTION IN LIMINE

    Defendant JOHN R. NETTLETON, by and through undersigned counsel, files this Motion in Limine and states the following in support:

    1. Defendant is charged in a ten-count indictment with obstruction of justice, concealment of material facts, falsification of records, and making false statements.

    2. The Government has provided voluminous discovery in this matter.

    3. Based on a review of substantial portions of the discovery, as well as related matters, Defendant has determined that certain evidence should be excluded from trial in this matter.

    4. Defendant seeks to exclude from trial the following irrelevant and/or unfairly prejudicial evidence:

    **I.    THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY FROM C.D. THAT THE BLOOD ON THE PAPER TOWEL HE DISCOVERED LOOKED LIKE IT WAS USED FOR CLEANING BLOOD UP AND NOT FROM BEING PRESSED AGAINST A WOUND**

    C.D., a civilian, discovered a bloody paper towel in the rocks on the side of the dock outside Defendant's residence at Guantanamo Bay. C.D. opined that the saturation on the paper

towel came from cleaning up blood as opposed to from being pressed against a wound. C.D.'s statement concerning the source of the blood (cleaning up blood vs. pressing against a wound) should be excluded from trial. C.D.'s claim is totally speculative and unreliable; there is no meaningful basis for such an opinion. A lay witness may testify rationally based on his perception. Fed. R. Evid. 701(a); *see United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (a lay witness testimony is rationally based on the witness's perceptions if it is "based upon personal observation and recollection of concrete facts"). But C.D. did not observe how the blood got onto the paper towel. Unless a witness actually observed how the blood got onto the paper towel, any testimony as to the potential source of the blood would have to be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). C.D. is not an expert in hematology, pathology, or any other discipline that would qualify him to make such a statement. Accordingly, the statement should be excluded from trial.

## II. THE GOVERNMENT SHOULD BE PRECLUDED FROM PRESENTING TESTIMONY OR EVIDENCE THAT BLOOD WAS DISCOVERED ON THE HANDRAILS OUTSIDE DEFENDANT'S RESIDENCE

Investigators applied Bluestar to the handrails outside Defendant's residence which indicated the potential presence of residual blood (the areas luminesced during the application of Bluestar) on the railings leading to the dock. But the samples collected from the railings were subsequently tested for blood utilizing Hexagon OBTI (which alerts to the presence of human blood) and returned negative results. Bluestar is designed to reveal blood, but it can also create false positives when it interacts with other materials such as detergent, bleach, copper, etc. Thus, Bluestar is a highly unreliable means of determining whether blood is present since it will alert to a number of substances other than blood. Any testimony claiming that blood was discovered on the railings based on the Bluestar luminesce clearly would fail to meet the *Daubert* standard.

"*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife Intern.*, 401 F.3d 1233, 1237 (11th Cir. 2005). Here, since the samples from the railings were not subsequently confirmed to contain blood via a more reliable testing method, the Government should not be permitted to state that blood was discovered on the railings near the dock outside Defendant's residence.

### III. THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY OR EVIDENCE THAT BLOOD WAS DISCOVERED ON ANY LOCATION WHERE SUCH A CONCLUSION IS BASED SOLELY ON THE USE OF BLUESTAR

Investigators who searched in and around Defendant's residence used Bluestar and purportedly discovered blood at numerous locations. For reasons stated in the above paragraph, the Government should not be permitted to introduce testimony that blood was discovered if such testimony is based solely on the purported discovery of blood through the use of Bluestar. Bluestar, as noted previously, is an unreliable method of discovering blood, and testimony based on this does not meet the *Daubert* standard.

### IV. THE GOVERNMENT SHOULD BE PRECLUDED FROM MAKING ANY COMMENTS OR ELICITING ANY STATEMENTS IMPLYING DEFENDANT KILLED CHRISTOPHER TUR, OR STATEMENTS TO THE EFFECT THAT, BECAUSE OF DEFENDANT'S ACTIONS, NOBODY WILL EVER KNOW WHAT HAPPENED TO TUR

Defendant is not charged with killing Tur. The Government should not be permitted to make any statements which imply that Defendant killed Tur, or that the result of Defendant's actions is that we'll never know exactly what happened to Tur. These types of comments are not supported by the evidence, would be based entirely on impermissible speculation and conjecture, and be totally irrelevant and unfairly prejudicial; nor would such statements be fair inferences made from the evidence in this case.

    **V.    THE GOVERNMENT SHOULD BE PRECLUDED FROM MAKING ANY COMMENTS OR ELICITING ANY STATEMENTS THAT DEFENDANT HAD AN AFFAIR WITH K.B.**

Defendant has been accused of having had an affair with K.B. The Government has included K.B. on its witness list, and it has provided via discovery records of text messages between Defendant and K.B. Any claim that Defendant had an affair with K.B. should be excluded because 1) Defendant did not, in fact, have an affair with K.B., and 2) any evidence suggesting such an affair would be totally irrelevant to any material issues in this case and the danger of unfair prejudice would greatly outweigh any probative value. Therefore, this evidence should be excluded.

    **VI.    THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ELICITING TESTIMONY THAT DEFENDANT'S SON DESTROYED HIS CELL PHONE**

Any statement or evidence that Defendant's son destroyed or attempted to destroy his iPhone after learning of the criminal investigation into his father's potential involvement into Tur's death must be inadmissible. Defendant had no role in destroying the phone, and there is no evidence that Defendant in any way whatsoever suggested for his son to destroy the cell phone. Accordingly, such evidence is irrelevant and would be unfairly prejudicial, as the obvious implication would be that Defendant advised his son to destroy the phone.

    **VII.    THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY FROM CAPTAIN D.D. STATING THAT HE BELIEVED DEFENDANT WAS SPEAKING TO HIM ON JANUARY 10, 2015 AS IF TUR WERE ALREADY DEAD**

On January 10, 2015, Defendant and Captain D.D. spoke briefly at the exchange. Purportedly, Captain D.D. later reported that at the time of this conversation Defendant was speaking as if Tur were already dead (Tur's body had not yet been recovered), and that Defendant was in a planning mode in the event of Tur's death. If Captain D.D. testifies regarding

his conversation with Defendant, he should not be permitted to make any statement to the effect that Defendant was speaking as if Tur were already dead, or that he was in planning mode for his death. Such statement would be nothing more than an improper inference and would serve no purpose in assisting the jury to understand Captain D.D.'s testimony or determining any facts at issue. Thus, such testimony should be excluded under Fed. R. Evid. 701(b) (lay testimony is admissible if it is "helpful to clearly understanding the witness's testimony or to determining a fact in issue").

Wherefore, Defendant requests for this Court to grant this motion and exclude from trial the testimony and evidence discussed herein.

Submitted on July 22, 2019, by

s/ Daniel Schwarz
Daniel Schwarz
Fla. Bar No. 84665
Daniel Schwarz, P.A.
245 SE 1st Street, Suite 404
Miami, FL 33131
Phone: (305) 557-4671
Fax: (305) 503-6973
Daniel@danielschwarzlaw.com

Terence Lenamon
Fla. Bar No. 970476
Terence Lenamon, P.A.
245 SE 1st Street, Suite 404
Miami, FL 33131
Phone: (305) 373-9911
Fax: (305) 503-6973
terry@lenamonlaw.com

5

Colby C. Vokey
Texas Bar No. 24043391
The Law Firm of Colby Vokey PC
6924 Spanky Branch Court
Dallas, Texas 75248
(214) 697-0274
(214) 594-9034 Fax
vokeylaw@colbyvokey.com

CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, and thereby served on all interested parties.

s/ Daniel Schwarz

Daniel Schwarz