UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-cr-00001-TJC-PDB |
| | ) | |
| JOHN R. NETTLETON, | ) | |
| | ) | |
| Defendant. | ) | |

## **GOVERNMENT'S EXPERT WITNESS LIST**

The Government respectfully submits the following list of expert witnesses it intends to call in its case-in-chief:

1.  Lydia Benyam

2.  Dr. Christopher Gordon

3.  Dr. George F. Jackson

4.  Christine M. Tarallo

5.  Ursula Zipperer

The expert notices provided by the Government regarding those witnesses are attached to this filing as Exhibits A and B.  The parties are in the process of discussing trial stipulations that may obviate the need for four of these five expert witnesses.  Once those stipulations are finalized and signed, the Government will inform the Court.

Respectfully submitted,

*/s/ Peter M. Nothstein*
*Counsel for the Government*
TODD GEE

1

US v. JOHN NETTLETON                                    Case No. 3:19-cr-0001-TJC-PDB

Deputy Chief, Public Integrity Section
Todd.Gee2@usdoj.gov
PETER M. NOTHSTEIN
Trial Attorney, Public Integrity Section
Peter.Nothstein@usdoj.gov
Criminal Division
U.S. Department of Justice
1331 F Street, NW
3rd Floor
Washington, DC, 20005
Telephone:   (202) 514-1412


DATED:  December 12, 2019

US v. JOHN NETTLETON                                    Case No. 3:19-cr-0001-TJC-PDB

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing

pleading with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the attorneys of record for the defendant.

Dated: December 12, 2019          */s/ Peter M. Nothstein*
                                   Todd Gee, Deputy Chief
                                   Peter M. Nothstein, Trial Attorney
                                   Public Integrity Section
                                   Criminal Division
                                   U.S. Department of Justice



**U.S. Department of Justice**

Criminal Division

---

*Public Integrity Section*                                         *Telephone: 202-514-1412*
*1400 New York Avenue NW*                                          *Facsimile: 202-514-3003*
*The Bond Building, 12th Floor*
*Washington, D.C. 20005*

April 30, 2019

**Via FedEx**

Daniel Schwarz, Esq.
Daniel Schwarz, P.A.
Suite 404
245 SE 1st Street
Miami, FL 33131
Phone: (305) 557-4671
Email: daniel@danielschwarzlaw.com

Terence Lenamon, Esq.
Terence Lenamon P.A.
226 E Flagler St Ste 200
Miami, FL 33131-1324
Phone: (305) 373-9911
Email: terry@lenamonlaw.com

> Re:   Discovery Letter Production 3/Expert Notice: *United States v Nettleton*,
>       3:19-cr-0001-TJC-PDB

Dear Counsel,

   Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and consistent with the Court's scheduling order in the above-captioned case issued on March 15, 2019 (Dkt. No. 27), we are writing to provide you with notice regarding the experts the government intends at this time to call as witnesses in its case-in-chief.  The *curriculum vitae* of each of these witnesses is attached, unless otherwise noted.  Additionally, except where otherwise noted below, you have previously been provided in discovery with copies of these experts' reports and accompanying materials, such as notes, emails, and other work product developed during the course of the preparation of their expert reports.

   The government is willing to discuss with you whether stipulations could be agreed to that would substitute for the expert witness testimony discussed herein.[1]

---

[1]     The government provided you in discovery with the reports by several other persons who are experts in their fields, such as the reports prepared by experts on drift analysis and cell site analysis. The government does not intend at this time to call those persons as experts in its case-

**Christine M. Tarallo**

The governments intends to call Christine Tarallo, a Forensic Biologist at the U.S. Criminal Investigation Laboratory ("USACIL"), to testify in its case-in-chief as an expert in the fields of serology, forensic biology, forensic DNA analysis, and calculating related statistics.   A copy of her *curriculum vitae* is attached.  In summary, as further described in her reports, Ms. Tarallo will testify regarding her conclusion that blood could be identified on certain swabs taken by NCIS from the defendant's residence, and that where a DNA profile could be developed from swabs, it was a match only for Christopher Tur's DNA profile and not the defendant's DNA profile (except, as further described in her reports, for a swab taken from bedroom sheets upstairs that was found to have DNA belonging to a mixture of the defendant's DNA and an unknown female who was not Lara Tur).   As you know from our discussions, this DNA evidence is relevant because it establishes, among other things, Christopher's Tur's presence at the defendant's residence on January 9, 2015, the night of Tur's disappearance, despite the defendant's false statements to others about Tur's location that night and the defendant's efforts to conceal the occurrence and severity of the altercation he had with Tur at his residence.

Ms. Tarallo issued three reports in this case, which you have already been provided in discovery: (1) a report dated March 2, 2015, which was an attachment to Exhibit 183 in NCIS' Case Management Tool provided in discovery (Bates Range USDOJ-00442789-USDOJ-00442794); (2) a report dated October 3, 2015, which was an attachment to Exhibit 263 in NCIS' Case Management Tool (Bates Range USDOJ-00443227 to USDOJ-00443228); and (3) a report dated June 20, 2016, which was an attachment to Exhibit 303 in NCIS' Case Management Tool (Bates Range USDOJ-00443576 to USDOJ-00443579).   In preparing this notice, we have determined that we do not have in our possession Ms. Tarallo's underlying work product, such as her notes, and are obtaining those materials from USACIL expeditiously to provide you.

Ms. Tarallo will explain and testify regarding the information and conclusions contained in her reports. Ms. Tarallo will also testify about her role in the chain of custody; about serology generally; how biological evidence can be determined to be blood; about DNA in general (i.e., what it is, where it can be found, its uniqueness, its durability, and use in forensics); the tests for the presence of DNA specifically, including how they are performed and interpreted; how a DNA profile can be developed from samples of biological material (including how she developed the DNA profile for the defendant and Lara Tur from the buccal swabs taken from them, as well as how she developed the DNA profiles from the other samples she analyzed in this case), and about how an individual's DNA may be left behind in bodily fluids such as blood. Ms. Tarallo will explain what factors determine whether a sample is suitable for DNA analysis, about DNA testing procedures (including extraction, quantitation, amplification, detection, and sample comparison), about the testing processes used during the testing in this case and how the results of such testing are interpreted, and about the quality assurance measures taken to ensure the integrity of testing results.

---

in-chief.  If the defense takes a position in pre-trial litigation that necessitates the government reconsidering its decision and calling these experts in its case-in-chief, we will provide you with Rule 16 expert notice.  However, we may call these persons as rebuttal experts, for which expert notice is not required under Rule 16.  As a result, we will provide you with the *curriculum vitae* of these individuals as soon as we have them.

Ms. Tarallo's testimony will be based on her knowledge, training and experience, her reports, her examination and testing of the evidence listed in her reports, and her interpretation of the data obtained from that evidence.

## Ursula Zipperer

The governments intends to call Ursula Zipperer, a Casework Administration and Evidence Manager at the Armed Forces DNA Identification Laboratory ("AFDIL") and previously a DNA Analyst at AFDIL, to testify in its case-in-chief as an expert in the fields of fields of forensic biology, forensic DNA analysis, and calculating related statistics. Ms. Zipperer obtained the DNA profile of Christopher Tur from a sample taken during his autopsy. As discussed in Ms. Tarallo's March 2, 2015 report, Ms. Tarallo compared the DNA profile of Christopher Tur developed by AFDIL with the DNA profiles Ms. Tarallo developed from the swabs taken from the defendant's residence. We are in the process of obtaining Ms. Zipperer's report and related work product materials from AFDIL, and expect to be able to provide them to you shortly. Attached is a copy of Ms. Zipperer's *curriculum vitae.*

Ms. Zipperer will explain the information and conclusions contained in her report. She will testify about her role in the chain of custody; about DNA in general (i.e., what it is, where it can be found, its uniqueness, its durability, and use in forensics); the tests for the presence of DNA specifically, including how they are performed and interpreted; and how a DNA profile can be developed from samples of biological material (including how she developed the DNA profile for Christopher Tur from the sample taken in his autopsy). She will explain what factors determine whether a sample is suitable for DNA analysis, about DNA testing procedures (including extraction, quantitation, amplification, detection, and sample comparison), about the testing processes used during the testing in this case and how the results of such testing are interpreted, and about the quality assurance measures taken to ensure the integrity of testing results.

Ms. Zipperer's testimony will be based on her knowledge, training and experience, her report, her examination and testing of the evidence listed in her report, and her interpretation of the data obtained from that evidence.

## Other DNA-Related Witnesses

The government may call as witnesses the below-listed individuals who participated in the forensic examination and seizure of evidence and/or the DNA sampling and testing process. Their work is reflected in the case files you received in discovery, and their *curriculum vitae* is attached or will be provided to you shortly. We do not intend to call these witnesses as experts for the purposes of such testimony. If you have any questions about what each of these individuals did, please feel free to call us.[2]

- Michael Mann

---

[2]   If we identify additional non-expert witnesses involved in these processes that we intend to call as witnesses in our case-in-chief, we will provide you with the *curriculum vitae* for those individuals as well.

- Rachel Clergy
- Jason Boswell
- Carrie McNamara
- Amie Houghton
- Rick Dunwoodie

## Christopher Gordon

The government intends to call Dr. Christopher Gordon, the Chief of Medical Staff for the 71st Medical Group, Vance Air Force Base, Oklahoma and at the time he performed the autopsy of Christopher Tur, the Director of Operations of the Office of the Armed Forces Medical Examiner ("AFME"), as an expert in the field of forensic pathology, qualified to render an opinion with regard to the cause and manner of death of Christopher Tur. Dr. Gordon will also testify as a fact witness about what he observed and did during the autopsy. Attached is a copy of his *curriculum vitae*. In summary, as further described in his report, Dr. Gordon will testify regarding his conclusion about the cause and manner of Christopher Tur's death, and that, among other things observed during his autopsy of Tur's body about which he will testify, he found that Tur suffered from rib fractures that were received before death and a cut to his head that he could have received before his death. As you know from our discussions, the autopsy evidence (which is discussed in Paragraph 55 of the Indictment) establishes, among other things, that Christopher Tur was severely injured prior to his death during the altercation with the defendant. These injuries are relevant because, among other reasons, they make it unlikely that the defendant would not have recalled their altercation and provide evidence of the intent behind his false statements, concealment, and obstruction regarding Tur's appearance at his residence and the altercation that occurred there.

Dr. Gordon issued one report in this case: a report dated February 9, 2015, which was an attachment to Exhibit 158 in NCIS' Case Management Tool provided in discovery (Bates Range USDOJ-00442383-USDOJ-00442390). You have also previously been provided in discovery with his notes and other related work product.

Dr. Gordon will explain and testify regarding the information and conclusions contained in his report. The government is not re-stating all of the opinions in this notice but would incorporate his autopsy report herein. Dr. Gordon will testify that the cause of death was probable drowning in a setting of ethanol and fluoxetine toxicity and that the manner of death was undetermined. Dr. Gordon will testify about the observations he made during the autopsy and the significance thereof, including, but not limited to, the injuries he observed, and where possible, whether observations during the autopsy permitted him to conclude if those injuries were received before Tur's death. This testimony will include, but is not limited to, his conclusion that the rib fractures described in his report would have likely been caused prior to Tur's death given the other injuries described in his report and observed during the autopsy and in autopsy photographs; and his conclusion that the laceration below Tur's right eyebrow described in his report and observed during the autopsy and in autopsy photographs may have been caused before death. His testimony will include an explanation of the effects of these injuries, such as the amount of pain the rib fractures would have caused and the potential effect on Tur's mobility, as well as the amount of blood the laceration would have caused if received pre-mortem. His testimony will include an explanation of which of the injuries described in his report were fatal and which were non-fatal. He will explain that the time of death could not be determined given the decomposition of the body and the effect of it being in the water. Dr. Gordon will also testify about his role in the chain of

custody, as well as to explain common practices and procedures during an autopsy and any medical terms set forth in his report.

Dr. Gordon's testimony will be based on the observations he made during the autopsy, the autopsy photos and diagrams, his report, and his knowledge, training and experience.

**George F. Jackson**

As discussed in Dr. Gordon's report, he relied in part on the toxicology analysis and report prepared by Dr. George F. Jackson, a Forensic Toxicologist with AFME, in reaching his conclusion that Christopher Tur's cause of death was probable drowning in a setting of ethanol and fluoxetine toxicity and that the manner of death was undetermined. Pursuant to Federal Rule of Evidence 703, Dr. Gordon is permitted to testify as an expert about the facts or data he relied on in forming his opinions, such as the Dr. Jackson's report. Therefore, the government does not intend at this time to call Dr. Jackson as an expert in its case-in-chief. However, if the defendant objects to Dr. Gordon's testimony regarding Dr. Jackson's report and his reliance on it, or if the Court otherwise limits Dr. Gordon's testimony in this regard, the government will call Dr. Jackson as an expert witness in its case-in-chief and we therefore provide notice herein out of an abundance of caution.

Dr. Jackson issued one report in this case: a report dated February 3, 2015, which was an attachment to Exhibit 158 in NCIS' Case Management Tool provided in discovery (Bates Range USDOJ-00442391-USDOJ-00442392). You have also previously been provided in discovery with his notes and other related work product. A copy of his *curriculum vitae* is attached.

If called as an expert witness, Dr. Gordon will testify as an expert in the field of forensic toxicology. Dr. Gordon prepared one report, which you have been provided in discovery. Dr. Gordon will explain and testify regarding the information and conclusions contained in his report. The government is not re-stating all of the opinions in this notice but would incorporate his toxicology report herein. Dr. Gordon will testify regarding the import of the various findings of his report, such as the possible impact of the level of ethanol and fluoxetine discovered on a human being. In particular, this testimony will include, but is not limited to, an explanation that the ethanol level in Christopher Tur's blood found in the toxicology testing would not have killed him, but would have left him under the influence of alcohol and caused severe impairment, and that the fluoxetine in Tur's system could have negatively reacted with the alcohol to cause further impairment.

**Attachments**

Attached to this letter are the following discovery materials discussed herein:

|   | Discovery Item | Quantity | Bates Range |
|---|---|---|---|
| 1. | CVs (Tarallo, Gordon, Jackson, Zipperer) | 4 files | USDOJ-00447543 - USDOJ-00447570 |

If you have any questions, please do not hesitate to contact us.

Sincerely,
ANNALOU TIROL
Acting Chief
Public Integrity Section

By:

Todd Gee
Deputy Chief
Peter Nothstein
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
(202) 514-9752 (Gee)
(202) 616-2401 (Nothstein)
Todd.Gee2@usdoj.gov
Peter.Nothstein@usdoj.gov

4/30/2019

FedEx Ship Manager - Print Your Label(s)



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

4/30/2019                                          FedEx Ship Manager - Print Your Label(s)



## After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



**U.S. Department of Justice**

Criminal Division

---

*Public Integrity Section*                                      *Telephone: 202-514-1412*
*1400 New York Avenue NW*                                       *Facsimile: 202-514-3003*
*The Bond Building, 12th Floor*
*Washington, D.C. 20005*

September 12, 2019

**Via Email**

Daniel Schwarz, Esq.                          Colby Vokey, Esq.
Daniel Schwarz, P.A.                          The Law Firm of Colby Vokey PC
Suite 404                                     6924 Spanky Branch Court
245 SE 1st Street                             Dallas, TX 75248
Miami, FL 33131                               vokeylaw@colbyvokey.com
daniel@danielschwarzlaw.com

Terence Lenamon, Esq.
Terence Lenamon P.A.
226 E Flagler St Ste 200
Miami, FL 33131-1324
terry@lenamonlaw.com

Re:    Supplemental Expert Notice: *United States v Nettleton,*
       3:19-cr-0001-TJC-PDB

Dear Counsel,

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and consistent with the
Court's scheduling order in the above-captioned case issued on March 15, 2019 (Dkt. No. 27), we
are writing to provide you with supplemental notice regarding the experts the government intends
at this time to call as witnesses in its case-in-chief.

**<u>Christine M. Tarallo</u>**

In addition to the reports identified in the government's April 29, 2019 expert notice, Ms.
Tarallo authored a June 15, 2016 report (USDOJ-00448079 – USDOJ-00448084), which replaced
her March 2, 2015 report.

**<u>Lydia Benyam</u>**

The government intends to call Lydia Benyam, a Forensic Biologist at the Defense
Forensic Science Center to testify in its case-in-chief as an expert in the fields of serology, forensic
biology, forensic DNA analysis, and calculating related statistics. Her *curriculum vitae* is attached
to this letter.   Ms. Benyam received the DNA extraction from Ms. Tarallo, performed
quantification, amplification, and separation using capillary electrophoresis on the suspected blood

samples as well as control substances.  From this process, Ms. Benyam generated a DNA profile, which she then provided to Ms. Tarallo for further analysis.

The key documents relating to Ms. Benyam's testimony have already been provided in discovery: (1) a June 6, 2016 DNA worksheet (USDOJ-00447993 – USDOJ-00447994); and (2) a DNA Control Chart (16-0930_0748_0998_ID.pdf, found in the zip file "16-0748.zip" contained within the folder "USDOJ-00448474").

## Other DNA-Related Witnesses

As noted in our April 29 letter, the government may call as witnesses individuals who participated in the forensic examination and seizure of evidence and/or the DNA sampling and testing process.  In addition to the individuals listed in that letter, the government may also call Michael Scherach for the same purpose.  His *curriculum vitae* is attached to this letter.  We do not intend to call Mr. Scherach as an expert for the purposes of such testimony.

## Attachments

Attached to this letter are the following discovery materials discussed herein:

| | Discovery Item | Quantity | Bates Range |
|---|---|---|---|
| 1. | CVs (Benyam, Scherach) | 2 files | USDOJ-00448477 to USDOJ-00448482 |

If you have any questions, please do not hesitate to contact us.

Sincerely,
JOHN KELLER
Acting Chief
Public Integrity Section

By: _____

Todd Gee
Deputy Chief
Peter Nothstein
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
(202) 514-9752 (Gee)
(202) 616-2401 (Nothstein)
Todd.Gee2@usdoj.gov
Peter.Nothstein@usdoj.gov