UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-cr-00001-TJC-PDB |
| | ) | |
| JOHN R. NETTLETON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE IRRELEVANT EVIDENCE**

**I.     INTRODUCTION**

The United States of America, by and through undersigned counsel, respectfully submits this Motion in Limine to Exclude Irrelevant Evidence.

At the December 16, 2019 pretrial hearing, the Defendant suggested to the Court that he may seek to introduce two types of inadmissible evidence and argument: 1) suggestions that the Government engaged in selective prosecution; and 2) invitations to the jury to speculate that the Defendant withheld information from NCIS because he was concerned about NCIS's alleged mistreatment of his family.

This Court should prohibit this impermissible evidence and argument because 1) selective prosecution is a legal defense not appropriate for the jury's consideration; and 2) NCIS Agents did not interview any of the Defendant's family until after the Defendant's allegedly obstructive and concealing conduct

was completed.

### II. THE DEFENDANT IS PROPOSING TO MAKE ARGUMENTS TO THE JURY THAT ARE SELECTIVE PROSECUTION CLAIMS THAT SHOULD BE EXCLUDED.

#### A. Background

At the December 16 hearing, the Defendant suggested that he may elicit testimony or argue to the jury that the Government has engaged in selective prosecution. *See* Ex. A (transcript of Dec. 16, 2019 hr'g) at 39 (statement by defense counsel: "if we were in a military courtroom -- if this had been a Navy case, as probably it should have been in the first place."). To be certain, the Defendant later foreswore such a defense, stating "Judge, we're not going to introduce any of this to the jury about any kind of selective prosecution." *Id*. at 67. The Defendant continued:

> I mean, we know historically what we're not going to get into is that the government here spent two years in front of two different grand juries trying to indict Mr. Nettleton, that Mr. Nettleton was relieved of duty, and he sat for two years in Jacksonville continuing to work his service and then retired, and then they -- shortly thereafter, they brought the indictment.

*Id* at 68.[1]

---

[1] Should the Defendant mention before the jury that the Defendant "sat two years in Jacksonville" the Government should be permitted to inform the jury that the Government and the Defendant engaged in nearly eight months of ultimately unsuccessful plea negotiations which began nearly one year before the Defendant retired from the Navy.

However, the Defendant also made clear that he intends to argue that the NCIS agents were predisposed to believing that the Defendant murdered Chris Tur and so tried to influence witnesses, such as Dr. Gordon, who performed the autopsy of Tur's body:

> And the reason we want them to call Dr. Gordon, Judge, is that we intend to prove that there's some fishy business going on with the government, NCIS, and other members of this investigative team that is going to play out in front of this jury, and really call into question the credibility of the people who conducted this investigation.

Ex. A at 63). The Defendant later clarified the nature of the "fishy business" to which he was referring, asserting that the autopsy report of Dr. Gordon "has what we consider some driven – improper opinion testimony that was driven by one of their NCIS agents."[2] *Id*. at 65. The Defendant then stated, "But in the course of this investigation, NCIS conducts this investigation and it is clear that they are not being fair and focused when they're looking at Mr. Nettleton. . . . And there is going to be evidence that there were some things said to Dr. Gordon by one of their agents that you can call into question about -- that these folks are being fair-minded and open-minded during this process."  *Id*. at 68  The Defendant continued:

---

[2] However, it should be noted that the Defendant has not moved to exclude Dr. Gordon's testimony on the grounds that he expressed improper opinions.

3

> So there's a lot of collateral stuff that's going on in this investigation that clearly goes to their reliability in collecting evidence; their focus that they have in trying to say that he did this, he should have done that; their leading kind of focus with some of the witnesses, some of the interview processes, some of the collection of evidence -- all that is going to call into question whether you can trust this investigative body who conducted this investigation.  And that's extremely important in this particular case.

*Id*. at 69.

### B.  Discussion

The Government anticipates, based on these statements, that the Defendant will attempt to elicit testimony that certain NCIS agents believed that the Defendant was responsible for Tur's death and should have been charged with different crimes.  This is an impermissible claim of selective prosecution.

It is well-settled that claims of selective prosecution are legal arguments not proper for the jury's consideration.  "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Accordingly, "[t]he selective prosecution defense is an issue for the court to decide, not an issue for the jury."  *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995); *see also United States v. Jennings*, 991 F.2d 725, 730 (11th Cir. 1993).

In other words, because "[s]elective prosecution has no bearing on the determination of factual guilt," such a claim must "be raised by pretrial motion" and not presented to the jury. *United States v. Scrushy*, 721 F.3d 1288, 1305 (11th Cir. 2011).

Selective prosecution claims can take many forms, such as that the charges should have been brought in another court, as when the Defendant asserted that the case "should have been" brought by the Navy as a court martial. Ex. A at 39. The claim that the choice between two courts of concurrent jurisdiction, in this case federal district court and a court martial, was made with some insidious purpose is an allegation of selective prosecution. *See United States v. Barry*, 2019 U.S. Dist. LEXIS 95042 (D.D.C. 2019) (rejecting defendant's claim of selective prosecution simply because he was prosecuted in a court of concurrent jurisdiction, despite others charged with the same offense being charged in a different court.).

Although the Defendant specifically stated that he would not employ a defense before the jury of selective prosecution, his later statements regarding the conduct of NCIS Agents, in particular with regard to Dr. Gordon, imply that he intends to suggest that NCIS Agents reached certain conclusions that other charges, such as murder, were appropriate and pushed witnesses to agree. This too is an argument of selective prosecution. Challenges to the specific

charges (as opposed to the decision of whether or not to prosecute at all) are claims of selective prosecution which are not proper to be brought before the jury. *See United States v. Goodwin*, 457 U.S. 368, 384 (1982) (emphasis added) (discussing the applicability of vindictive prosecution standards to a defendant's issue with charging decisions; *see also United States v. Barner*, 441 F.3d 1310, 1318 (11th Cir. 2006) (explaining that superseding indictments that encompassed previous, defective charges did not constitute vindictive prosecution).

Questions regarding the opinions of NCIS Agents as to the proper charges present additional problems. First, a law enforcement agent's personal or professional opinion as to whether the defendant committed a crime is impermissible opinion testimony whether asked by the defendant or the government. *See Iva Ikuko Toguri D'Aquino v. United States*, 192 F.2d 338, 371 (9th Cir. 1951) (upholding the trial court's refusal to allow the defendant to ask the "highly objectionable" question of the government agent's opinion of guilt or innocence "because it sought a conclusion from a witness upon the question which was exclusively within the province of the jury."). The Defendant may claim that questions about personal opinion are simply a means to elicit bias, which is always relevant, but questions about a law enforcement agent's professional judgment regarding a crime are not about personal animus towards the Defendant and so do not go to bias. *Id*. (question about government agent's

opinion as to guilt or innocence "was not designed to demonstrate either bias or lack of bias.").

Even if such questions were probative of bias, "[t]he extent to which a witness may be cross-examined for the purposes of showing bias rests on the sound discretion of the trial judge. *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1357 (5th Cir. 1973) (citing *Alford v. United States*, 282 U.S. 687, 696 (1930)). The Court must "balance the probative value of the evidence sought to be introduced against the risks its admission may entail." *Howell*, 483 F.2d at 1357. "The potential risks may include the possibility of undue prejudice, embarrassment, or harassment, either to the witness or to a party; the possibility of misleading or confusing the jury or the possibility of undue delay or waste of time. *Id.* (citation omitted); FED. R. EVID. 403. Here, an agent's conclusion or belief as to the Defendants role in Tur's death runs significant risk of misleading and confusing the jury into thinking that the Agent's opinion as to what charge the evidence supports is important, rather than the jury's own judgment as to whether the Government has met its burden.

<u>Second</u>, should the Defendant probe into whether NCIS Agents believed during the investigation that the Defendant was responsible Tur's death and imply that such a opinion was improper, the Government should be entitled to rehabilitate the witness by allowing them to explain to the jury why they held

7

such a belief, if they did. The reasons for holding that opinion, if any Agent did, will be relevant to show the jury that the opinion was based on the facts gathered in the investigation and not a bias against the Defendant or other improper motive. This outcome is untenable—it invites a mini-trial about whether the Agents' professional judgments as to murder were well-founded and confuses and misleads the jury into thinking it must decide whether the Defendant is responsible for Tur's death. This is exactly what the Defendant accused the Government of trying to do. *See* Ex. A at 58 ("So what the Court is going to see happen here, which has already started at the very beginning of this process, is that the government's going to make this a murder case."); 60 ("The government wants to incite this jury into leading a charge of murder against my client. That's what this is all about. And that's what you're going to see."). For these reasons, even if questions about Agents' opinions about the proper charges were relevant, which they are not, they should be excluded because of the dangers of confusing the issues and misleading the jury. FED. R. EVID. 403.

### III. DEFENDANT'S ARGUMENT HE WITHHELD INFORMATION FROM NCIS BECAUSE OF ALLEGED MISTREATMENT OF HIS FAMILY BY NCIS AGENTS SHOULD BE EXCLUDED.

#### A. Background

At the December 16 hearing, the Defendant stated that one of his

defenses will be that the Defendant did not tell NCIS the truth about what happened on January 9, 2015 because NCIS had mistreated his family during the investigation, which made the Defendant hesitant to speak to NCIS. As counsel for the Defendant stated during the December 16 hearing:

> There's going to be evidence that they mistreated his family, his children. And all of this is going to be relevant to why he may not have come forward and trusted these folks in the investigation unit, because of the way they were being treated and the things that were going on.

Ex. A at 68-69.

### B. Discussion

As an initial matter, this anticipated defense is factually implausible, if not impossible, because the obstructive and misleading conduct and false statements alleged in the Indictment all occurred between Tur's initial disappearance on January 10 and January 21, the date Nettleton left GTMO. *See* Ind. (Dkt. 1) at ¶¶ 16-59.[3] The first NCIS interview of any member of the Nettleton family occurred on January 20, when Agents interviewed the Defendant's then 14-year-old daughter, Julia, in the presence of her mother and simultaneously interviewed the Defendant. The Defendant's two sons were

---

[3] The only post-GTMO conduct alleged in the Indictment is that the Defendant continued to encourage Lara Tur to lie about their affair from the time he left the island on January 21, 2015 until November 2016.

9

both attending college in Florida and therefore not present at GTMO during the entire period from when Tur went missing until the Defendant was relieved of command and removed from GTMO on January 21. Therefore, as a matter of fact, it seems unlikely, if not impossible, that NCIS's conduct toward his family affected the Defendant's actions from January 10 to January 20 in any way.

Of course, the Defendant is entitled to cross-examine testifying NCIS witnesses about their own conduct during the investigation, to the extent that such conduct is relevant to the witness's credibility. However, testimony from witnesses about NCIS agents' misconduct on GTMO during the period in question is not relevant to or probative of why the Defendant made misleading and false statements, and therefore is inadmissible, unless it can be shown that the Defendant was aware of such conduct *prior* to his alleged obstructive conduct. FED. R. EVID. 401. This testimony would be irrelevant because it invites the jury to speculate as to whether or not the Defendant knew of such conduct, and if he did, whether it motivated his own conduct. Furthermore, evidence of the conduct of an NCIS agent, if unconnected to the Defendant's knowledge of that conduct in the relevant time period, would have minimal probative value that would be outweighed by the risks of misleading the jury and confusing the issues. FED. R. EVID. 403. Finally, the Defendant's

10

knowledge must be shown through admissible evidence, not through inadmissible out-of-court statements by the Defendant to others that he heard of such conduct and it affected his actions. *See* FED. R. EVID 801(d)(1)(A) (defining as non-hearsay statements of a party only if offered against—and not by—a party).

The Government is unable to point to specific instances of alleged misconduct to be excluded because the Government is unaware of <u>any</u> misconduct by any NCIS Agent towards the Defendant's family or others and the timeline of interviews makes it unlikely, if not impossible, that any conduct by any NCIS Agent caused any of the Defendant's conduct alleged in the Indictment. Therefore, the Government asks this Court to prohibit the Defendant from introducing evidence of alleged misconduct by NCIS agents, other than proper impeachment of Government witnesses,[4] unless the Defendant can show, by admissible non-hearsay evidence, that Defendant was aware of such conduct prior to his alleged obstructive conduct.

## IV. **CONCLUSION**

For the reasons stated herein, the United States respectfully requests that this Court exclude 1) any argument to the jury or testimony suggesting the

---

[4] The Defendant has noticed several NCIS Agents on his witness list, and of course, it would be improper to call an NCIS Agent—or any witness for that matter—for the sole purpose of impeaching the witness.

Government engaged in selective prosecution; and 2) any evidence of alleged misconduct by NCIS agents, other than proper impeachment of Government witnesses, unless the Defendant can show, by admissible non-hearsay evidence, that Defendant was aware of such conduct prior to his alleged obstructive conduct.

        Respectfully submitted,

        /s/ Peter M. Nothstein
        *Counsel for the Government*
        TODD GEE
        Deputy Chief, Public Integrity Section
        Todd.Gee2@usdoj.gov
        PETER M. NOTHSTEIN
        Trial Attorney, Public Integrity Section
        Peter.Nothstein@usdoj.gov
        Criminal Division
        U.S. Department of Justice
        1400 New York Avenue, NW
        12th Floor
        Washington, DC, 20005
        Telephone:   (202) 514-1412

        DATED:   December 20, 2019

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

Dated: December 20 2019                /s/ *Peter M. Nothstein*
Todd Gee, Deputy Chief
Peter M. Nothstein, Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice