UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:19-cr-00001-TJC-PDB

UNITED STATES OF AMERICA,

v.

JOHN R. NETTLETON,
        Defendant.
_____/

## MOTION TO CONDUCT INTERNET/SOCIAL MEDIA RESEARCH OF JURORS

Defendant JOHN R. NETTLETON, by and through below counsel, files this motion and

states as follows:

**a. The ABA Rules permit passive review of jurors' internet presence**

In April 2014, the American Bar Association (ABA) Standing Committee on Ethics and

Professional Responsibility released Formal Opinion 466, stating that

> Unless limited by law or court order, a lawyer may review a juror's or potential
> juror's Internet presence, which may include postings by the juror or potential juror
> in advance of and during a trial, but a lawyer may not communicate directly or
> through another with a juror or potential juror.
>
> A lawyer may not, either personally or through another, send an access request to
> a juror's electronic social media. An access request is a communication to a juror
> asking the juror for information that the juror has not made public and that would
> be the type of ex parte communication prohibited by Model Rule 3.5(b).

ABA,        Formal        Opinion        466        (available        online        at

https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/formal

_opinion_466_final_04_23_14.pdf).

Consistent with the ABA opinion, Defendant seeks the opportunity to review the electronic

social media of jurors (both prospective jurors and empaneled jurors). Defendant, of course, *would*

*not* communicate with the jurors at any time through the research. Defendant will not make any "friend" requests, send any Tweets or subscribe to jurors' Twitter or Instagram feeds, etc.

**b. Allowing the parties to review jurors' internet presence is beneficial to the trial process**

It is axiomatic that a fair trial requires fair and impartial jurors. If there is publicly available information that would help the parties identify jurors with potential biases, competent and diligent counsel needs to consider gaining access to it. Defendant's case is a fairly high-profile case in the Jacksonville area and has prompted a significant amount of media coverage (predominantly quite negative, in fact), raising the likelihood that prospective jurors have already been made aware of the purported circumstances of this case.[1] Also, with the large Navy base in Jacksonville, there is an increased chance of jurors having gained knowledge of the case either personally or through friends and family.

Internet research of jurors allows the parties to investigate whether the jurors have published opinions related to the case, whether they have posted any statements evidencing bias or prejudice, whether the jurors have made any comments requiring follow-up individual questioning, etc. This research potentially allows the parties to learn information about the jurors that is directly connected to their ability to serve as fair and impartial jurors in this case.

**c. Cases discussing researching jurors' internet presence**

Counsel is aware of at least two published decisions from out-of-state courts permitting social media research of jurors. In *Carino v. Muenzen,* No. A–5491–08T1, 2010 WL 3448071, (N.J. Super. App. Div. Aug. 30, 2010), the trial court prohibited a plaintiff from using the Internet

---

[1] Even the most recent status conference before this Court garnered media attention. https://www.news4jax.com/news/local/2019/12/17/trial-for-naval-captain-accused-of-hindering-mysterious-2015-guantanamo-bay-death-investigation-beings-soon/

to investigate prospective jurors because the plaintiff failed to give notice that he would be using the Internet to investigate during jury selection. The appellate court affirmed on unrelated grounds, but noted that the trial court abused its discretion by imposing the prohibition. The appellate court explained that the parties were on a level playing field as it relates to investigating jurors because internet access was available to both parties. *Ibid*.

In *Sluss v. Com.*, 381 S.W.3d 215 (Ky. 2012), the defendant was convicted of murder. Post-trial, he presented evidence that two of the jurors were Facebook friends with the victim's mother, despite indicating during voir dire that they didn't know the victim or her family, or the circumstances of the case. *Id*. at 221. The appellate court held that the defendant was "effectively precluded from conducting a full voir dire due to the jurors' misleading response to questions asked by the trial court." *Id.* at 228. The appellate court explained that being Facebook friends with the victim's mother was not itself necessarily sufficient to undermine the fairness and impartiality of the juror, but nonetheless remanded the case to the trial court for the limited purpose of conducting a hearing to determine if the jurors' answers during voir dire were untruthful and the extent of the jurors' relationship with the victim's mother, and whether they should have been struck for cause. *Id*. at 229. The appellate court also adopted the New York County Lawyers Association's Committee on Professional Ethics opinion allowing

> a pretrial search of a prospective juror's social networking site, provided that there is no contact or communication with the prospective juror and the lawyer does not seek to "friend" jurors, subscribe to their Twitter accounts, send jurors tweets or otherwise contact them. During the evidentiary or deliberation phases of a trial, a lawyer may visit the publicly available Twitter, Facebook or other social networking site of a juror but must not "friend" the juror, email, send tweets to the juror or otherwise communicate in any way with the juror or act in any way by which the juror becomes aware of the monitoring.

*Id*. at 227 (*citing* N.Y. Cnty. Lawyers Ass'n Comm. on Prof'l Ethics, Formal Op. 743 (May 18, 2011).

Conversely, in *United States v. Norwood,* No. 12–CR–20287, 2014 WL 1796644 (E.D.Mich. May 6, 2014), the court rejected the defendant's opposition to the empaneling of an anonymous jury, and their request for the jurors' identifying information in order to monitor their social media accounts during the trial to ensure that jurors weren't discussing the case. The court found that the proposed monitoring would "unnecessarily chill the willingness of jurors summoned from our community to serve as participants in our democratic system of justice." *Id.* at *4 (*quoting United States v. Kilpatrick,* No. 10–20403, 2012 WL 3237147, at *1 (E.D.Mich. Aug. 7, 2012). The court further found that the 24–page, 99–question juror questionnaire was sufficient to reveal any potential bias. *Id.* at *3. But in that case, unlike the instant case, the defendants were allegedly part of a violent criminal enterprise, and there were actual allegations of witness intimidation. *Id.* at *2. Additionally, there's no reason to believe in Defendant's case that the passive review of jurors' social media would have any chilling effect; in fact, the jurors likely wouldn't even know if their particular public social media profiles were even reviewed here.

In *Oracle America, Inc. v. Google Inc*., 172  F. Supp.3d 1100 (N.D. Calif. 2016), the Court raised  certain concerns about allowing litigants to conduct social media research on jurors, including 1) "the danger that upon learning of counsel's own searches directed at them, our jurors would stray from the Court's admonition to refrain from conducting Internet searches on the lawyers and the case"; 2) that research "will facilitate improper personal appeals to particular jurors via jury arguments and witness examinations patterned after preferences of jurors found through such Internet searches"; and 3) the protection of the jurors' privacy. *Id*. at 1102-03.

Regarding the first concern raised in *Oracle*, as noted previously, there's no reason to believe that the jurors would even know if their social media was actually reviewed by the parties. The research could be conducted without making any "friend" requests or subscribing to any

jurors' media accounts. The social media information reviewed by counsel would all be publicly available information. Even if counsel has to log-in to an account to view publicly available information, for example through LinkedIn, the settings could be made to ensure that the searches remain anonymous. The second concern can easily be addressed by an admonition that counsel may not make personal appeals to any particular juror based solely on information learned from social media. And the third concern is mitigated where only publicly available information is accessed by the parties. As noted by the ABA ethics committee, the passive review of jurors' social media is akin to "driving down the street where the prospective juror lives to observe the environs in order to glean publicly available information that could inform the lawyer's jury-selection decisions." ABA Formal Opinion 466, pg. 4.

WHEREFORE, Defendant requests permission to conduct research of the publicly available internet presence, including social media, of jurors (including both prospective and empaneled jurors).

Submitted on Dec. 20, 2019, by

s/ Daniel Schwarz
Daniel Schwarz
FBN 84665
245 SE 1st Street, Suite 404
Miami, FL 33131
Phone: 305-900-0481
Fax: 305-503-6973
Daniel@danielschwarzlaw.com

Colby Vokey
Texas Bar No. 24043391
The Law Firm of Colby Vokey PC
6924 Spanky Branch Court
Dallas, TX 75248
Phone: 214-697-0274
Fax: 214-594-9034
Email: vokeylaw@colbyvokey.com

Terence Lenamon
Fla. Bar No. 970476
Terence Lenamon P.A.
245 SE 1st Street, Ste. 404
Miami, FL 33131

Phone: 305-373-9911
Fax: 305-503-6973
Email: terry@lenamonlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Dec. 20, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, and thereby served on all interested parties.

s/ Daniel Schwarz
Daniel Schwarz