*JURY TRIAL – VOLUME VIII*

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Jacksonville, Florida |
| Plaintiff, | Case No. 3:19-cr-1-J-32PDB |
| vs. | January 16, 2020 |
| JOHN R. NETTLETON, | 8:57 a.m. |
| Defendant. | Courtroom No. 10D |

_____

JURY TRIAL
(VOLUME VIII)
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE

COURT REPORTER:

Shannon M. Bishop, RDR, CRR, CRC
221 North Hogan Street, #150
Jacksonville, FL  32202
Telephone:  (904)549-1307
dsmabishop@yahoo.com

(Proceedings reported by mechanical stenography;
transcript produced by computer.)

A P P E A R A N C E S

GOVERNMENT COUNSEL:

        **TODD GEE, ESQ.**
        **PETER MARSHALL NOTHSTEIN, ESQ.**
        US Department of Justice
        1400 New York Avenue NW
        Washington, DC  20005

DEFENSE COUNSEL:

        **COLBY VOKEY, ESQ.**
        The Law Firm of Colby Vokey, P.C.
        6924 Spanky Branch Court
        Dallas, TX  75248

        **TERENCE LENAMON, ESQ.**
        Terence Lenamon P.A.
        245 SE 1st Street, Suite 404
        Miami, FL  33131

        **DANIEL SCHWARZ, ESQ.**
        Daniel Schwarz, P.A.
        245 SE 1st Street, Suite 404
        Miami, FL 33131

# T A B L E   O F   C O N T E N T S

Page No.

PROCEEDINGS:

Jury Charge...................................... 10
Jury retires to deliberate...................... 35

E X H I B I T S   R E C E I V E D

Page No.

Court's Exhibits:

2 .......................................... 50

P R O C E E D I N G S

1

2    January 16, 2020                                    8:57 a.m.

3                              - - -

4              COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Timothy J. Corrigan presiding.

7              Please be seated.

8              THE COURT:  Good morning.  Overnight we -- I took a

9    look at the instructions again.  And I did not find any

10   corrections.

11             Did either of the parties have any on the

12   instructions?  I know -- I know we've got the verdict form, but

13   the instructions.

14             Anything, Mr. Gee?

15             MR. GEE:  No, Your Honor.

16             THE COURT:  Mr. Vokey?

17             MR. VOKEY:  No, Your Honor.

18             THE COURT:  Mr. Schwarz?

19             MR. SCHWARZ:  No, Judge.

20             THE COURT:  Okay.  All right.  And on the verdict

21   form -- when I was looking through it, I decided it would be

22   helpful to the jury to refer them to the actual instruction

23   number that went with the count, so -- so we did that.  And I

24   understand from Mr. Burns there's no objection to me doing

25   that.

1      In the course of that, it was pointed out that there

2  were a couple of "and"s which should be "or"s.  So in Jury

3  Instruction -- I mean, in Verdict Form No. 1 we have now

4  changed it to "hinder, delay, or prevent."

5      And in Jury Instruction -- I mean, Verdict Form

6  Paragraph 2, we have also changed it to "corruptly obstructing,

7  influencing, or impeding official proceedings."

8      Other than that the verdict form is unchanged.

9      Any objection -- any further clarifications or

10  corrections to the verdict form, Mr. Gee?

11      MR. GEE:  Your Honor, I hate to do that, but I'd just

12  note in the Court's change that you just made in Count Two on

13  the verdict form to make it work, which is, of course, an

14  accurate statement of the law, in the jury instructions there

15  were -- keeping the sort of "and" that's from the indictment --

16  so page 13 of the jury instructions still says "and," which is

17  also a -- proving the conjunctive -- you know, "and" would also

18  be an accurate statement of the law, but I guess the two should

19  match, if you're going to change it in the verdict form.

20      THE COURT:  What's the instruction?

21      MR. GEE:  It's page 13, where it says "and impeding."

22  Now the verdict form says "or impeding."

23      THE COURT:  So which should it be?

24      MR. GEE:  Well, "or" is -- as the Court knows, I

25  mean, "and" is -- you indict in the conjunctive and can prove

1   in the disjunctive.  But I guess then for clarity for a jury

2   "or" is the clearest version, and correct.

3        (Judge confers with law clerk.)

4             THE COURT:  Are you talking about in paragraph 2 of

5   Jury Instruction 10?

6             MR. GEE:  Yes, sir, page 13.

7             THE COURT:  Okay.  I think that was attempting to

8   capture what the charge was, not necessarily -- I mean, the

9   first sentence -- the first sentence of it says, "It's a

10  federal crime for anyone to corruptly obstruct, influence, or

11  impede any official proceeding."

12            And Count Two charges -- which is the way it was

13  charged.

14            MR. GEE:  That's correct, Your Honor.  It's just that

15  the verdict form -- in light of the Court's change this

16  morning, the verdict form is repeating the language of the

17  second paragraph on page 13, except now the verdict form says

18  "or impeding," which is an accurate statement of the law, and

19  the instructions say "and impeding."

20            They're both accurate statements of the law.

21            THE COURT:  I understand.

22            MR. GEE:  It's just to make them match.

23            THE COURT:  I understand.

24       (Judge confers with law clerk.)

25            THE COURT:  All right.  I'm just going to change --

1    in Jury Instruction No. 10, the second paragraph after the word

2    "influencing," I will change that from an "and" to an "or."

3              That's what you're talking about?

4              MR. GEE:  Yes, Your Honor.

5              THE COURT:  All right.  That's how I'll instruct the

6    jury.

7              Any other clarifications or changes to either the

8    charges or the verdict, Mr. Gee?

9              MR. GEE:  No, Your Honor.  Thank you.

10             THE COURT:  Mr. Vokey?

11             MR. VOKEY:  No, sir.

12             THE COURT:  All right.  The charges are settled.  The

13   verdict is settled.

14             And Mr. Burns, of course -- I'll read it to the jury

15   the way we just agreed to it.  Obviously we'll have to

16   substitute this page before we give it to the -- to the jury.

17             All right.  Are they all set?

18             COURT SECURITY OFFICER:  Yes, sir.

19             THE COURT:  All right.  Let's have the jury.

20             COURT SECURITY OFFICER:  All rise for the jury.

21        (Jury enters, 9:03 a.m.)

22             COURT SECURITY OFFICER:  Please be seated.

23             THE COURT:  Well, good morning.  You caught me doing

24   a little housekeeping over here.  I'll be right with you.

25             Well, good morning, ladies and gentlemen.  We're at

1  the point of the trial where I have to earn my money a little
2  bit here.

3        This is -- this will be your instructions on the law
4  that you will apply in this case.  And in advance I'm going to
5  apologize to you.

6        Because it is the law, I -- I can't just talk to you
7  about it, I have to actually read it, because the word -- every
8  word makes a difference.

9        And I'll also apologize to you in advance, some of it
10  is a little -- how should we say -- a little dense.  And I've
11  done the best I can within what the law will allow me to do to
12  make it as clear as I can for you, but it is a little dense.

13        But the good news is that I'm going to read it to
14  you -- and I'd ask you to listen to me.  Ms. Diaz is going to
15  put it up on the -- on the screen while I'm reading it, so you
16  can follow along hopefully.

17        And then you will have copies -- each of you will
18  have a copy of the jury instructions back in the jury room.  So
19  if you need to refer back to something, we can do that.

20        And then it -- near the end of the instructions, I'll
21  also review the verdict form with you, the verdict that -- that
22  you would actually render in the case.  And we'll go over that,
23  as well.  So I'll try to give you as much help as I can, within
24  the -- within what the limits -- that the law allows me to do
25  so.

1           And, again, you don't have to memorize this or

2   anything, just try to listen and read, maybe, because you will

3   have copies of these as we -- as I indicated.

4           Members of the jury:  It's my duty to instruct you on

5   the rules of law that you must use in deciding this case.

6   After I've completed these instructions, you will go to the

7   jury room and begin your discussions, what we call your

8   deliberations.

9           You must decide whether the government has proved the

10  specific facts necessary to find the defendant guilty beyond a

11  reasonable doubt.

12          Your decision must be based only on the evidence

13  presented here.  You must not be influenced in any way by

14  either sympathy for or prejudice against the defendant or the

15  government.

16          You must follow the law as I explain it, even if you

17  do not agree with the law, and you must follow all of my

18  instructions as a whole.  You must not single out or disregard

19  any of the Court's instructions on the law.

20          The indictment or formal charge against the defendant

21  isn't evidence of guilt.  The law presumes every defendant is

22  innocent.  The defendant does not have to prove his innocence

23  or produce any evidence at all.  The government must prove

24  guilt beyond a reasonable doubt.  If it fails to do so, you

25  must find the defendant not guilty.

1    The government's burden of proof is heavy, but it

2 doesn't have to prove a defendant's guilt beyond all possible

3 doubt.  The government's proof only has to exclude any

4 "reasonable doubt" concerning the defendant's guilt.

5    A "reasonable doubt" is a real doubt, based on your

6 reason and common sense after you've carefully and impartially

7 considered all the evidence in the case.

8    "Proof beyond a reasonable doubt" is proof so

9 convincing that you would be willing to rely and act on it

10 without hesitation in the most important of your own affairs.

11 If you are convinced that the defendant has been proved guilty

12 beyond a reasonable doubt, say so.  If you are not convinced,

13 say so.

14    As I said before, you must consider only the evidence

15 that I have admitted in the case.  Evidence includes the

16 testimony of witnesses and the exhibits admitted.  But,

17 anything the lawyers say is not evidence and isn't binding on

18 you.

19    You shouldn't assume from anything I've said that I

20 have any opinion about any factual issue in this case.  Except

21 for my instructions to you on the law, you should disregard

22 anything I may have said during the trial in arriving at your

23 own decision about the facts.

24    Your own recollection and interpretation of the

25 evidence is what matters.

1        In considering the evidence you may use reasoning and

2    common sense to make deductions and reach conclusions.  You

3    shouldn't be concerned about whether the evidence is direct or

4    circumstantial.

5        "Direct evidence" is the testimony of a person who

6    asserts that he or she has actual knowledge of a fact, such as

7    an eyewitness.

8        "Circumstantial evidence" is proof of a chain of

9    facts and circumstances that tend to prove or disprove a fact.

10    There's no legal difference in the weight you may give to

11    either direct or circumstantial evidence.

12        When I say you must consider all the evidence, I

13    don't mean that you must accept all the evidence as true or

14    accurate.  You should decide whether you believe what each

15    witness had to say, and how important that testimony was.  In

16    making that decision, you may believe or disbelieve any

17    witness, in whole or in part.  The number of witnesses

18    testifying concerning a particular point doesn't necessarily

19    matter.

20        To decide whether you believe any witness, I suggest

21    that you ask yourself a few questions:

22        Did the witness impress you as one who was telling

23    the truth?

24        Did the witness have any particular reason not to

25    tell the truth?

1  Did the witness have a personal interest in the

2  outcome of the case?

3  Did the witness seem to have a good memory?

4  Did the witness have the opportunity and ability to

5  accurately observe the things he or she testified about?

6  Did the witness appear to understand the questions

7  clearly and answer them directly?

8  Did the witness's testimony differ from other

9  testimony or other evidence?

10  You should also ask yourself whether there was

11  evidence that a witness testified falsely about an important

12  fact, and ask whether there was evidence that at some other

13  time a witness said or did something, or didn't say or do

14  something, that was different from the testimony the witness

15  gave during this trial.

16  But keep in mind that a simple mistake doesn't mean a

17  witness wasn't telling the truth as he or she remembers it.

18  People naturally tend to forget some things or remember them

19  inaccurately.  So, if a witness misstated something, you must

20  decide whether it was because of an innocent lapse in memory or

21  an intentional deception.  The significance of your decision

22  may depend on whether the misstatement is about an important

23  fact or about an unimportant detail.

24  A defendant has a right not to testify.  But since

25  the defendant did testify, you should decide whether you

1    believe the defendant's testimony in the same way as that of

2    any other witness.

3           When scientific, technical, or other specialized

4    knowledge might be helpful, a person who has special training

5    or experience in that field is allowed to state an opinion

6    about the matter.

7           But that doesn't mean you must accept the witness's

8    opinion.  As with any other witness's testimony, you must

9    decide for yourself whether to rely upon the opinion.

10          The indictment charges that a crime was committed "on

11   or about" a certain date.  The government doesn't have to prove

12   that the crime occurred on an exact date.  The government only

13   has to prove beyond a reasonable doubt that the crime was

14   committed on a date reasonably close to the date alleged.

15          The word "knowingly" means that the act was done

16   voluntarily and intentionally and not because of a mistake or

17   by accident.

18          The word "willfully" means that the act was committed

19   voluntarily and purposely, with the intent to do something the

20   law forbids; that is, with the bad purpose to disobey or

21   disregard the law.  While a person must have acted with the

22   intent to do something the law forbids before you can find that

23   person acted "willfully," the person need not be aware of the

24   specific law or rule that his conduct may be violating.

25          A "material fact" is an important fact, not some

 1   unimportant or trivial detail, that has a natural tendency to

 2   influence or is capable of influencing a decision of a

 3   department or agency in reaching a required decision.

 4          And let me just -- let me just stop right there and

 5   explain to you -- this Instruction No. 7, the definition of

 6   "knowingly," the definition of "willfully," the definition of

 7   "material fact" -- those words are used quite a bit in the --

 8   in the later instructions, but we don't redefine them every

 9   time.

10          So if you want to know what "willfully" means, you go

11   back and you look at No. 7 here.  If you want to know what

12   "knowingly" means, you look at No. 7.  If you want to remember

13   what a "material fact" is, you go back here and find it.

14          So these are kind of like the definitions that --

15   that -- you'll see the words later on in the instructions.

16   Okay?

17          The indictment charges eight separate crimes, called

18   "counts," against the defendant.  Each count has a number.  I

19   will explain the law governing each of these counts.

20          And as you see, this has -- this has a title to it,

21   because this is the name of the crime that has been charged in

22   this instruction.  So I'm going to talk to you about that

23   particular crime in this Jury Instruction No. 9.

24          And the crime that has been charged is obstruction of

25   justice, 18, U.S.C., Section 1512(b)(3).  And that's Count One

1  of the charges.

2       It's a federal crime for anyone to obstruct justice

3  by knowingly and willfully engaging in misleading conduct

4  toward another person with the intent to hinder, delay, or

5  prevent the communication to federal law enforcement officers

6  of information relating to the commission or possible

7  commission of a federal offense.

8       Count One charges the defendant with knowingly and

9  willfully engaging in misleading behavior towards another

10 person with the intent to hinder, delay, or prevent the

11 communication to law enforcement officers, that is, agents of

12 the Navy Criminal Investigative Service, which is NCIS, and

13 members of the Naval Station Guantanamo Bay Security

14 Department, information relating to the commission and possible

15 commission of a federal offense, in violation of 18, U.S.C.,

16 Section 1512(b)(3).

17       The defendant can be found guilty of this crime only

18 if all the following are proved beyond a reasonable doubt.

19       Number 1, the defendant knowingly and willfully

20 engaged in misleading conduct toward another person.

21       Number 2, the defendant acted with the intent to

22 hinder, delay, or prevent the communication of information to a

23 federal law enforcement officer of the United States.

24       And, No. 3, that such information related to the

25 commission or possible commission of a federal offense.

1    The term "misleading conduct" means any of the

2    following:

3        Number 1, knowingly making a false statement.

4        Number 2, intentionally omitting information from a

5    statement and thereby causing a portion of such a statement to

6    be misleading, or intentionally concealing a material fact, and

7    thereby creating a false impression by such statement.

8        Number 3, knowingly submitting or inviting reliance

9    on a writing or recording that is false, forged, altered, or

10    otherwise lacking in authenticity, with the intent to mislead.

11        Or, No. 4, knowingly used -- knowingly using a trick,

12    scheme, or device with intent to mislead.

13        As to the defendant's intent to hinder, delay, or

14    prevent the communication of information to federal law

15    enforcement officers, the government must prove beyond a

16    reasonable -- I'm sorry, the government must prove a reasonable

17    likelihood that the relevant communication would have been made

18    to a federal law enforcement officer; the government must show

19    that the likelihood of communication to a federal law

20    enforcement officer was more than remote, outlandish, or simply

21    hypothetical.

22        The government does not need to prove the defendant

23    knew -- knew the offense was a federal offense or that a

24    federal investigation was either underway or imminent.

25        The term "federal law enforcement officer" means an

1  officer or employee of the federal government, or a person

2  authorized to act for or on behalf of the federal government,

3  or serving the federal government as an adviser or consultant,

4  authorized under law to engage in or supervise the prevention,

5  detection, investigation, or prosecution of an offense.

6  　　　　The term "using a trick, scheme, or device" means

7  acting in a way intended to deceive others.

8  　　　　Jury Instruction No. 10 regards Count Two, which is

9  obstruction of justice.  That's what's charged under

10  18, U.S.C., Section 1512(c)(2).

11  　　　　It's a federal crime for anyone to corruptly

12  obstruct, influence, or impede any official proceeding, or

13  attempt to do so.

14  　　　　Count Two charges the defendant with corruptly

15  obstructing, influencing, or impeding official proceedings,

16  that is, a Department of the Navy court-martial, or attempting

17  to do so, in violation of 18, U.S.C., Section 1512(c)(2).

18  　　　　The defendant can be found guilty of this crime only

19  if all the following are proved beyond a reasonable doubt:

20  　　　　Number 1, the defendant knew of or foresaw an

21  official proceeding, and knew that his actions were likely to

22  affect it.

23  　　　　Number 2, the defendant engaged in conduct which

24  constituted a substantial step toward the commission of the

25  crime of obstruction of an official proceeding.

1          Number 3, the defendant acted corruptly, with an

2    improper purpose and to engage in conduct knowingly and

3    dishonestly, with the specific intent to subvert, impede, or

4    obstruct the actual or foreseen official proceeding.

5          And, No. 4, the natural and probable effect of the

6    defendant's conduct would be the interference with the due

7    administration of justice.

8          The term "official proceeding" includes a proceeding

9    before a federal government agency which is authorized by law.

10   The Department of the Navy is a federal government agency.

11         An official proceeding need not be pending or about

12   to be instituted at the time of the offense.  However, the

13   government must prove beyond a reasonable doubt that the

14   defendant knew of or foresaw the particular official

15   proceeding.

16         Jury Instruction No. 11 is about Count Three.  And

17   that's alleged to be a scheme to conceal material facts under

18   18, U.S.C., Section 1001(a)(1).

19         It's a federal crime to knowingly and willfully

20   falsify, conceal, or cover up by any trick, scheme, or device a

21   material fact in any matter within the jurisdiction of the

22   executive, legislative, or judicial branch of the government of

23   the United States.

24         Count Three charges the defendant with knowingly and

25   willfully falsifying, concealing, or covering up by trick,

1  scheme, and device, a material fact, that is, during the

2  investigation being conducted by the Navy, the defendant

3  intended to falsify and conceal the facts he knew about the

4  circumstances surrounding the disappearance, injury, and death

5  of Christopher Tur, in violation of 18, U.S.C., Section

6  1001(a)(1).

7          The defendant can be found guilty of this crime only

8  if all the following are proved beyond a reasonable doubt:

9          Number 1, the defendant concealed a fact by trick,

10 scheme, or device.

11         Number 2, the fact was material.

12         Number 3, the fact was within the jurisdiction of a

13 federal department or agency.

14         Number 4, the defendant had a legal duty to disclose

15 the concealed fact.

16         And, No. 5, the defendant acted knowingly and

17 willfully.

18         The Department of the Navy is a federal department.

19         Defendant had no legal duty to report to any person

20 his alleged violations of the Uniform Code of Military Justice,

21 also referred to as the UCMJ, including but not limited to

22 adultery, disorderly conduct, or conduct unbecoming of an

23 officer.

24         A legal duty to disclose facts can only be imposed by

25 statute, government regulation, or form.

1    The term "using a trick, scheme, or device" means

2    acting in a way intended to deceive others.  The government

3    doesn't have to show that the governmental agency or department

4    was, in fact, deceived or misled.

5    The concealment of a fact through a trick, scheme, or

6    device is not a crime unless the fact is material.

7    Jury Instruction No. 12 relates to both Count Four

8    and Count Five.  It alleges falsification of records under

9    18, U.S.C., Section 1519.

10    Title 18, United States Code, Section 1519 makes it a

11    federal crime for anyone to knowingly alter, conceal, cover up,

12    falsify, or make a false entry in a record, document, or

13    tangible object with the intent to impede, obstruct, or

14    influence the investigation of a matter within the jurisdiction

15    of any department or agency of the United States, or in

16    relation to such a matter.

17    Count Four charges the defendant with knowingly

18    altering, concealing, covering up, falsifying, or making a

19    false entry in a record, document, or tangible object, that is

20    a Navy Blue communication sent to Navy officials, with the

21    intent to impede, obstruct, or influence the investigation of a

22    matter within the jurisdiction of the Department of the Navy,

23    that is the investigation into the circumstances surrounding

24    the disappearance, injury, and death of Christopher Tur.

25    Count Five charges the defendant with knowingly

1    altering, concealing, covering up, falsifying, or making a

2    false entry in a record, document, or tangible object, that is

3    e-mails to Admiral Mary Jackson and Captain Christopher Gray,

4    with the intent to impede, obstruct, or influence the

5    investigation of a matter within the jurisdiction of the

6    Department of the Navy, that is the investigation into the

7    circumstances surrounding the disappearance, injury, and death

8    of Christopher Tur.

9         The defendant can be found guilty of these crimes --

10   and the crimes refer to Count Four and Count Five -- only if

11   all the following are proved beyond a reasonable doubt:

12        Number 1, that the defendant knowingly altered,

13   concealed, covered up, falsified, or made the false entry in a

14   record, document, or tangible object.

15        Number 2, that the defendant acted with the intent to

16   impede, obstruct, or influence the investigation in relation to

17   a matter.

18        And, No. 3, that the matter was within the

19   jurisdiction of a department or agency of the United States.

20        The Department of the Navy is a department of the

21   United States.

22        There is no requirement that the matter or

23   investigation have been pending or imminent at the time of the

24   obstruction, but only that the acts were taken in relation to

25   or in contemplation of any such matter or investigation.

1    A "tangible object" is one used to record or preserve

2    information.

3    As to Count Four, it is possible to prove the

4    defendant guilty of Count Four even without evidence that the

5    defendant personally performed every -- every act charged.

6    Ordinarily, any act a person can do may be done by

7    directing another person, or "agent."  Or it may be done by

8    acting with or under the direction of others.

9    A defendant is also responsible if the defendant

10   willfully directs or authorizes the acts of an agent, employee,

11   or other associate.

12   But finding that a defendant is criminally

13   responsible for the acts of another person requires proof that

14   the defendant intentionally associated with or participated in

15   the crime, not just proof that the defendant simply knew about

16   a crime.

17   In other words, you must find beyond a reasonable

18   doubt that the defendant was a willful participant and not

19   merely a knowing spectator.

20   Jury Instruction No. 13 applies to Counts Six, Seven,

21   and Eight.  And those are the final counts.

22   So this instruction applies to all three.  But the

23   charges are completely separate as to what the alleged false

24   statements are, and so you'll need to -- to follow along as

25   you're listening to me and also considering your verdict.

1        And it's under 18, U.S.C., Section 1001(a)(2).

2        Title 18, United States Code, Section 1001(a)(2)

3   makes it a federal crime to knowingly and willfully make any

4   materially false, fictitious, or fraudulent statement or

5   representation in any matter within the jurisdiction of the

6   executive branch of the government of the United States.

7        Count Six charges the defendant with willfully and

8   knowingly making a material false, fictitious, and fraudulent

9   statement and representation within the jurisdiction of the

10  executive branch by stating to Executive Officer Alonza Ross

11  that Christopher Tur did not go to the defendant's home on or

12  about January 9, 2015, after the party at the Officer's

13  Club/Bayview.

14       Count Seven charges the defendant with willfully and

15  knowingly making a material false, fictitious, and fraudulent

16  statement and representation within the jurisdiction of the

17  executive branch by stating to Executive Officer Alonza Ross

18  that Christopher Tur had come to defendant's residence on or

19  about January 9, 2015, but that Tur had not come inside.

20       Count Eight charges the defendant with willfully and

21  knowingly making a materially false, fictitious, and fraudulent

22  statement and representation within the jurisdiction of the

23  executive branch by stating to Admiral Mary Jackson and Captain

24  Christopher Gray that the defendant and Lara Sabonash, formerly

25  Lara Tur, were not having an affair.

1          The defendant can be found guilty of this crime only

2    if all the following are proved beyond a reasonable doubt:

3          Number 1, the defendant made the statement, as

4    charged.

5          Number 2, the statement was false.

6          Number 3, the falsity concerned a material matter.

7          Number 4, the defendant acted willfully, knowing that

8    the statement was false.

9          And, No. 5, the false statement was made or used for

10   a matter within the jurisdiction of a department or agency of

11   the United States.

12         Pardon me.

13         The Department of Navy is a department of the United

14   States.

15         A statement is "false" when made if it is untrue when

16   made and the person making it knows it is untrue.  The

17   government doesn't have to show that the governmental agency or

18   department was, in fact, deceived or misled.

19         The making of a false statement is not a crime unless

20   the falsity relates to a "material" fact.

21         And I remind you that the definition of "material" is

22   back in Jury Instruction No. 7.

23         Each count of the indictment charges a separate

24   crime.  You must consider each crime and the evidence relating

25   to it separately.  If you find the defendant guilty or not

1  guilty of one crime, that must not affect your verdict for any

2  other crime.

3       I caution you that the defendant is on trial only for

4  the specific crimes charged in the indictment.  You're here to

5  determine from the evidence in this case whether the defendant

6  is guilty or not guilty of those specific crimes.

7       While the Uniform Code of Military Justice, known as

8  the UCMJ, and Navy regulations may be relevant to certain

9  aspects of this case, the defendant is not charged with

10  violating the UCMJ or Navy regulations.  The defendant can only

11  be found guilty of a specific count if you unanimously find he

12  violated all the elements for that count.

13       You must never consider punishment in any way to

14  decide whether the defendant is guilty.  If you find the

15  defendant guilty, the punishment is for the judge alone to

16  decide later.

17       Your verdict, whether guilty or not guilty, must be

18  unanimous; in other words, you must all agree.  Your

19  deliberations are secret, and you'll never have to explain your

20  verdict to anyone.

21       Each of you must decide the case for yourself, but

22  only after fully considering the evidence with the other

23  jurors.  So you must decide the case with one another and try

24  to reach an agreement.  While you're discussing the case, don't

25  hesitate to reexamine your own opinion and change your mind if

1  you become convinced that you were wrong.  But don't give up

2  your honest beliefs just because others think differently or

3  because you simply want to get the case over with.

4        Remember that, in a very real way, you're judges,

5  judges of the facts.  Your only interest is to seek the truth

6  from the evidence in the case.

7        When you get to the jury room, please choose one of

8  your members to act as your foreperson.  The foreperson will

9  direct your deliberations and will speak for you in court.

10       And I'm going to review the verdict form with you

11  now.  Ms. Diaz is going to put it up on the screen and I'll go

12  through.

13       So this is the verdict form that you will be using as

14  you decide the case.  Once you've made a unanimous decision as

15  to each of the -- of the counts, you'll -- your foreperson will

16  fill in the verdict form.  And let me just show you how it

17  works.

18       So you see, first of all, the name of the case and

19  the case number and so forth, and then it says "verdict."  And

20  then the first one, it says, "With regard to Count One of the

21  indictment."

22       And what I've done here is -- I've put in parentheses

23  right after that the jury instruction that goes with that

24  count.  So you'll be able to say, "Okay.  What was Count One?

25  I'm going to go look at Jury Instruction No. 9, and that will

1    tell me what Count One was."

2           So I think that will be helpful for you.  And that

3    also has -- Count One also has -- I mean, I'm sorry, Jury

4    Instruction No. 9 has all the information about that particular

5    count that you'll need as you're deliberating.

6           And I -- I've done that for each of the -- each of

7    the counts, so -- so the parentheses there should direct you to

8    the jury instruction that has to do with that specific count.

9           Now, you're -- you're required to consider all the

10   jury instructions all the time, but that will -- that can focus

11   you on that particular one when you're -- when you're looking

12   at that count.

13          So it says, "With regard to Count One of the

14   indictment," which can be found at -- a discussion of it at

15   Jury Instruction No. 9 -- "which charges John R. Nettleton with

16   obstruction of justice by knowingly engaging in misleading

17   behavior," and then it goes on.

18          And then, "We, the jury, find the defendant," and

19   then your unanimous decision, either not guilty or guilty.

20          And I'm not going to go through each one of these,

21   but look at No. 2.  You see that it's the same format.

22   Obviously a different charge.  It references you to a specific

23   jury instruction number that can help you to remember what that

24   count is about.

25          Look at page 2.  Same thing.

1          Count Three.

2          Now, Counts Four and Five -- you see there?

3          You see that the same jury instruction, Jury

4   Instruction No. 12, applies to both of those counts.  So that's

5   why it says Jury Instruction No. 12 in the parentheses there.

6          And then flip over.

7          The same thing is true for Count Six, Count Seven,

8   and then, on the last page, Count Eight.

9          The jury instruction that discusses those counts is

10  Jury Instruction No. 13.  And that's why it's in parentheses on

11  all three of those.

12         So -- and then at the end of it there -- obviously

13  once you've filled it all out, then your foreperson will sign

14  the date and -- affix the date and then sign it, and that will

15  be your verdict.

16         If you wish to communicate with me at any time during

17  your deliberations -- and it is not -- it's not required you

18  communicate with me.  In fact, many juries have no questions or

19  anything.  But some do.

20         And some of them I'm not able to answer.  Some of

21  them I can.  It depends on what the question is.

22         Obviously if it's just about your comfort or

23  logistics, we can help you with that.  But if it gets into the

24  substance of the case, I may or may not be able to give you an

25  answer to your question.

1        But if you do have a question, have your foreperson

2    write it on a piece of paper -- we'll give you a pad and

3    envelopes -- write it, you'll put it in the envelope.  You hand

4    it to the court security officer who's posted outside and

5    they'll bring it to my attention.

6        If you do have a question, sometimes it takes us a

7    while to get back to you.  Sometimes I have to confer with the

8    lawyers.  It just depends on what it is.

9        And, as I said, some juries have no questions.  And

10   that's perfectly fine, too, so -- but you do have the ability

11   to communicate with me.

12       But when you do so, don't tell me anything about your

13   deliberations.  I don't want to hear about the votes or where

14   you are or anything like that.  That -- that stays in the jury

15   room with you.

16       So here's the way this works.  In just a few minutes,

17   when I finish yakking here, you'll go back and deliberate on

18   your verdict.  What will happen is, I'll ask you to go back and

19   pick a foreperson first.

20       Shortly -- not right away, but shortly, Ms. Diaz will

21   be in with copies of the jury instructions, the verdict, pad

22   and paper, envelopes, and then also the exhibits.

23       So you'll have all the exhibits back there with you

24   that you can review.  And if you -- if the -- if you want to

25   look at the video again, that -- we have that back there,

1  right?

2          COURTROOM DEPUTY:  Yes, sir.

3          THE COURT:  Okay.  There's a way to -- you'll have

4  a -- video capability back there.

5          Anyway, you'll have all the exhibits back there with

6  you.  But it takes her a little while to get all that and get

7  back to you, but she will.

8          There's really no rules about how to deliberate, so

9  that's why we have a foreperson that kind of acts like the --

10  the facilitator.  But how the jury goes about its business is

11  really up to the jury, in terms of how it organizes itself, how

12  it deliberates.

13          There's only a couple of rules that I have.  One is

14  that I like everybody to hear everything and participate at all

15  times.

16          So if somebody needs to go to the bathroom or if

17  somebody -- or if there's a break or something like that,

18  please stop all your deliberations and wait until everybody is

19  back together so that everybody can hear everything,

20  everybody's part of it.

21          It is okay to take a break.  You don't have to ask

22  permission, but -- but please don't talk to anybody when you're

23  out -- if you go to the restroom or anything, or whatever,

24  don't -- don't go down and get your cell phone or anything like

25  that.  But you can take a break.  And -- but while you're out,

1     no talking with anybody about anything.  And -- and then wait

2     for everybody to get back together before you resume your

3     deliberations.

4            We'll check with you around the lunch hour to see

5     what time you would like lunch, but we usually serve it around

6     12:00 or 12:30.  And we'll -- Ms. Diaz will check with you

7     about that.  But that's likely what we'll do.

8            And, as I said, we do bring that lunch in for you

9     today.  And so you'll -- and whether you deliberate during

10    lunch or whether you just want to take a lunch break and not

11    talk about the case, again, that's all kind of up to you.

12            Let me see counsel at sidebar a minute, please.

13        (Sidebar conference:)

14            THE COURT:  All previous objections are preserved.

15            Does anyone have any further objections to the

16    Court's instructions or the manner in which the Court has

17    instructed the jury?

18            MR. GEE:  Not from the government.

19            MR. VOKEY:  Not from the defense, Your Honor.

20        (The following proceedings occurred in open court, in the

21    presence of the jury:)

22        (Judge confers with courtroom deputy.)

23            THE COURT:  As you may know, or may have already

24    gathered, a federal criminal jury that deliberates is made up

25    of 12 people.  There are 16 people here.

1        Obviously we have some alternates because -- what if

2   somebody gets sick?  Or what if somebody hurts their ankle?  Or

3   what if -- you know, what -- so we have to have alternates.

4   But only 12 can deliberate.

5        And so four of you were previously designated

6   alternates.  We don't -- we don't tell you that at the

7   beginning, but I'm telling you now.

8        But I'm still going to ask you to maintain your

9   service in this way.  We're going to -- the four alternates --

10  and I'll tell you who you are in a moment.

11       But the four alternates, I'm going to ask you to stay

12  in the courthouse.  We've got a place for you that's going to

13  make you comfortable.  We're going to do everything we can to

14  make you comfortable.

15       We're going to ask you to stay in the courthouse

16  during the deliberations, because every once in a while a juror

17  gets sick during the deliberations, or for some other reason we

18  have to replace a deliberating juror with one of the

19  alternates.

20       And, in fact, I've had to do that within the last

21  couple of years.  I had a situation where we -- we ended up

22  replacing a deliberating juror with an alternate.

23       So it can happen.  It doesn't happen very much,

24  but -- but -- so the four alternates I'm going to ask to --

25  what we're going to do is, we're going to let you go in before

1   the rest of the jury and get whatever you have in the jury

2   room, if you have anything.  Then we're going to have you come

3   back out.  And then I'm going to send the 12 who are

4   deliberating in for their deliberations.

5           So the -- the four alternates are -- and I'm just

6   going to call you by your -- by your numbers.  The four

7   alternates are Juror No. 14, 15, 16, and No. 9.  So those are

8   the alternate jurors.

9           And so -- and, you know, it's kind of a funny

10  thing -- and I'll talk to you more about it.  But very often

11  people who didn't want to be on jury service when they started

12  now regret when they're -- found out they're an alternate.

13          But I will tell you, it's just part of our system,

14  and we have to have extra people.  And so I greatly appreciate

15  your service.

16          So what I'd like -- I'm going to ask -- I'm just

17  going to look at you right now.  Do any -- do any of the four

18  of you that I've just named, 14, 15, 16, and 9 -- do any of you

19  have things in the jury room?

20      (Affirmative response.)

21          THE COURT:  You do?

22          All right.  I'm going to ask you-all to just get up

23  right now, just the four of you, and go in and get whatever you

24  have and just bring it back out here.  And then we'll go from

25  there.

1          No, not you.

2          JUROR:  Didn't you say 16?

3          THE COURT:  Nope.  You might have been 16 --

4          JUROR:  I was 16.

5          THE COURT:  Yeah.  That's okay.  That's fine.  You're

6   good.

7      (Alternate jurors temporarily exit the courtroom.)

8          THE COURT:  And, Ms. Parks, why don't you just go in

9   with them and then have -- just go in with them and have them

10  come out when they're done.

11          COURT SECURITY OFFICER:  Yeah.  They're coming.

12          THE COURT:  Okay.  Good.

13      (Alternate jurors re-enter the courtroom.)

14          THE COURT:  All right.  So I'm going to ask the four

15  of you to just stay where you are.  I'm going to ask the 12 who

16  are going to be deliberating to now please retire and

17  deliberate upon your verdict.

18          And you can take your notepads with you, but remember

19  my instructions about the notes.

20          All right, ladies and gentlemen.

21          COURT SECURITY OFFICER:  All rise for the jury.

22      (Jury retires to deliberate, 9:44 a.m.)

23      (Judge confers with courtroom deputy.)

24          COURT SECURITY OFFICER:  Please be seated.

25          THE COURT:  All right.  So you're not feeling like

1   you're all by yourself, why don't you go sit next to them.

2           Okay.  So I don't know whether you're disappointed,

3   what you are, or whether you'd just like to leave now.  I don't

4   know.  But I -- and I -- I recognize being an alternate is not

5   necessarily the easiest thing.

6           You sat through all the evidence just like everybody

7   else.  You may feel like you -- you know, that you should be

8   one helping to decide the case.

9           And if that's the way you're feeling, I totally get

10  that.  But it's just the way the system works.  And -- but --

11  but, as I said, I've had a case within the last couple of years

12  where one of you would have been -- I would go to a -- you're

13  going to be in the courthouse -- I'm not going to say where,

14  because I don't want people coming and looking for you.

15          But you're going to be in the courthouse.  And I had

16  to come say, "You're up.  Get in there and get deliberating."

17          And so it -- it can happen.  And -- and so I -- I'm

18  going to ask you to do a couple of things for me.  We're going

19  to try to make you as comfortable as we possibly can.

20          We -- Judge Barksdale, who picked you -- she has a

21  lot of games and things that she has in her chambers.  And

22  we'll give those to you.

23          We'll be able -- you will be able to have your

24  phones.  We'll make sure you get your phones.  Matter of fact,

25  we'll probably -- Ms. Parks will probably take you down and you

1   can get your phone and bring it where you're going to go.  So

2   you'll be able to use your phones, except not about the case.

3           Because it's very important that you stay just the

4   way you are in terms of the case.  You can't talk to each other

5   about the case.  You can't talk to anybody else about the case.

6   You can't do any research about the case.  All the same rules

7   still apply.

8           Because we don't want you out there talking about it

9   or reading things or whatever, and then if we need you as a

10  juror we wouldn't be able to use you.

11          And so -- so you'll be able to conduct business, if

12  you want to, you can talk to your family, you can play games,

13  you can -- we're going to have some other things up there for

14  you.  We'll feed you.  We'll do everything we can to make you

15  comfortable.  But that's kind of the way it's going to be.

16          Can y'all do that for me?

17      (Affirmative response.)

18          THE COURT:  All right.  And, of course, we don't know

19  how long they're going to deliberate.  And we'll -- I'll

20  evaluate this, you know, as we go along.

21          My guess would be certainly we'd be here the better

22  part of the day.  But we will do everything we can to make you

23  comfortable.

24          Anybody have any questions or -- everybody good?

25      (Affirmative response.)

1      THE COURT:  Okay.  This is -- even though you're not

2  in that room, your service is just as important, and I really

3  appreciate it.  And I know it's a little bit awkward, but I

4  hope you'll understand.

5      The last group I had, you know, they were getting

6  along fine.  They were playing games with each other and they

7  were passing the time, and hopefully we'll let you do that as

8  well.  But, remember, nothing about the case.

9      So what's going to happen now?

10     (Judge confers with courtroom deputy.)

11     THE COURT:  I'm told there's maybe movies, too.  I

12  don't know.  Anyway, we're going to do everything we can to

13  make it as pleasant as we can for you.

14     So what's going to happen now is Ms. Parks is going

15  to escort you to the place you're going to be.  And I'm going

16  to ask you to stay in that area.  I know there's bathrooms and

17  everything.

18     And it's a nice area.  It's not -- you know, it's

19  not -- it's a perfectly nice area.  And -- and just remember

20  not to talk to anybody about it and don't let anybody talk to

21  you.

22     But thank you very much and go with Ms. Parks,

23  please.  Thank you.

24     COURT SECURITY OFFICER:  All rise.

25     THE COURT:  And we'll be back in touch with you as

1    the day goes along.  Okay?

2              JUROR:  Should we grab these?

3              THE COURT:  I tell you what, why don't you give them

4    to -- just leave them there and Ms. Diaz will get them and

5    she'll give them back to you if we end up needing you.

6              Thanks.

7         (Alternate jurors exit the courtroom.)

8              COURT SECURITY OFFICER:  Please be seated.

9              THE COURT:  All right.  Will y'all -- when I leave,

10   will y'all work with Ms. Diaz and make sure -- unless you've

11   already done it, make sure all the exhibits are according to

12   Hoyle, please, and that they're going to go back there.

13             After that, I'll -- I generally have a five-minute

14   call.  So if you're within five minutes' reach -- Ms. Diaz

15   needs to be able to get you here in five minutes.  However that

16   is, whether it's a phone, a text, whatever -- but five minutes.

17             At the lunch hour, once lunch is served to the

18   jury -- my universal experience is they're going to eat their

19   lunch, they're not going to return a verdict during lunch.

20             And so I'll probably give you, like, a 45-minute

21   window where you're not required to be on a five-minute call.

22   But we'll -- I'll either do that in person or I'll just let

23   Ms. Diaz let you know what the play is, so -- but you need to

24   let her know where you're going to be, and you need to be back

25   available on a five-minute call in case the jury has a question

1    or a verdict.

2         Anything else from the government?

3         MR. GEE:  No, Your Honor.  Thank you.

4         THE COURT:  Anything else, Mr. Vokey?

5         MR. VOKEY:  No, Your Honor.

6         THE COURT:  You know, I mentioned this yesterday, but

7    I'll mention it again.  At the end of a trial, but before the

8    jury comes back -- because when the jury comes back, the focus

9    is, of course, on that, and -- as it should be.

10        But at the end of the trial, if I'm able to do so --

11   and I'm not always able to do so.

12        But if I'm able to do so, I try to make note of

13   the -- of the lawyers and the parties' efforts in this case.

14   And my observation, as I indicated to you yesterday, is that --

15   that this case was very professionally tried, that there was

16   good cooperation between the parties.

17        And what it shows me and shows others, who are

18   watching, is that there's no inconsistency between being

19   professional, being cooperative when you can be, and still

20   zealously and effectively representing the party that you

21   represent.

22        Nobody can, of course, contend that -- that the

23   Department of Justice counsel didn't effectively represent the

24   United States, and nobody can contest that Mr. Vokey,

25   Mr. Lenamon, Mr. Schwarz all gave effective professional

1  representation to Captain Nettleton.  But they were still able

2  to cooperate when they could do so and to make the trial run

3  efficiently and professionally.

4          And so I just want to acknowledge that.  Because in

5  our -- in our world, and especially in our legal world, that's

6  not always the case.  And when it's not, the system doesn't

7  work as well.

8          And so I do want to acknowledge the work of the

9  lawyers, their staff, and the parties in this case.  Obviously

10  when the verdict comes back, that's going to be a significant

11  event.  And I know people will be focused on different things.

12  But I wanted to -- to say that while I had a moment.

13          All right.  We are in recess.

14          COURT SECURITY OFFICER:  All rise.

15     (Recess from 9:52 a.m. to 1:44 p.m.; all parties present.)

16          COURT SECURITY OFFICER:  All rise.  This Honorable

17  Court is back in session.

18          Please be seated.

19          THE COURT:  We've got a question from the jury which

20  I have provided to counsel.

21          And the question -- I'll read it in its entirety.

22          Question, dash, clarification:  Does official

23  proceedings include investigations, underlined, by the federal

24  government or the Navy?

25          And this, I assume, refers to Count Two, wherein the

1   official proceeding that's charged is a, quote, Department of

2   Navy court-martial, close quote.

3            The indictment as alleged included other matters

4   under the rubric "official proceedings," but, by request of the

5   government, those other two matters were eliminated.

6            And so as it's been given to the jury, "official

7   proceedings" only refers to a Department of the Navy

8   court-martial.

9            I note that when we defined "official proceeding" in

10  the jury instruction on page 14, we -- we defined it as

11  "including a proceeding before a federal government agency

12  which is authorized by law.  The Department of the Navy is a

13  federal government agency."

14           So that's the guidance we've given to the jury, I

15  believe.  And obviously they have a question about -- about it.

16           And so the question is what, if anything, I can do

17  about it.

18           So, Mr. Vokey, I'll start with the defendant.

19           MR. VOKEY:  Yes, sir.  I think we can tell them

20  that -- that the answer is no, that official proceedings do not

21  include investigations of the federal government of the Navy.

22           That's -- under Count Two, it only applies to

23  court-martials, not investigations.  And they underlined

24  "investigations."  I think we can tell them -- easily tell them

25  the answer is no.

1        And we had dealt with this pretrial.  And I'll let

2   Mr. Schwarz speak about that.  We dealt with that in a pretrial

3   issue.

4        MR. SCHWARZ:  Judge, we had dealt with this back in

5   July.  And the government agreed that it doesn't include these

6   investigations.

7        So I think this really is one -- as Mr. Vokey said,

8   it's straightforward and it does not include federal government

9   or Navy investigations.

10       THE COURT:  Hold on one second.

11       All right.  Mr. Gee, what says the government?

12       MR. GEE:  Your Honor, we agree that -- that the

13   defendant is not charged with obstructing an investigation.

14   However, I don't agree with the defendant's proposed answer.

15   The -- the charge, as well as the instruction, discusses how

16   the defendant is charged with attempting to obstruct a

17   court-martial, but then it goes on to -- to provide various

18   variations on that, like, for example, that the defendant

19   foresaw a court-martial, et cetera.

20       And so, in other words, for example, the

21   court-martial doesn't actually have to be pending.  And so I

22   think that their question -- answering it in that way may --

23   may not be appropriate.

24       And I think what we would simply recommend is some

25   sort of an answer along the lines of, "I take it from your

1   question you're referring to Count Two, which is regarding

2   obstructing official proceedings.  I refer you to my

3   instruction, Jury Instruction No. 10, which describes, you

4   know, the manner in which the defendant is charged in that

5   count," something like that.

6          THE COURT:  Mr. Vokey, what's your response to what

7   Mr. Gee just said?

8          MR. VOKEY:  I disagree.  I think it's a

9   straightforward question and a straightforward answer.  And

10  since this is something that we discussed with this Court

11  pretrial, and agreed to, then I think we give them the simple

12  answer of -- do official proceedings include investigations --

13  and specifically they're looking for investigations -- by the

14  federal government or the Navy.  The answer is no.  I think we

15  can clearly tell them that.  And that's based on what he's

16  charged with.

17         THE COURT:  What about if I -- what about -- I tend

18  to agree with you, Mr. Vokey, that I ought to say something

19  to -- other than "go see my instructions."

20         Because the truth of the matter is the instructions

21  do say that "Department of Navy court-martial."  But then when

22  we define official proceeding, it says "includes a proceeding

23  before a federal government agency which is authorized by law."

24         So it's not -- it doesn't directly restate the

25  Department of Navy court-martial.  And part of that probably

 1  was because originally it was -- there were multiple things in

 2  that instruction and then we took those out, at the request of

 3  the government.

 4          So here's -- here's something I'm thinking about.  I

 5  haven't decided.

 6          "I am" -- "I assume from your question you are

 7  referring to Count Two (Jury Instruction No. 10).  Under Count

 8  Two 'official proceedings' is defined only as a 'Department of

 9  the Navy court-martial.'"

10          I'm thinking about that.

11          So let me say it again and then I'll get reaction.

12          "I assume from your question you are referring to

13  Count Two, Jury Instruction No. 10.  Under Count Two 'official

14  proceedings' is defined only as a Department of the Navy

15  court-martial."

16          Mr. Gee, I'll take your response -- your reaction to

17  that.

18      (Counsel confer.)

19          MR. GEE:  I think that would be fine, Your Honor.

20          THE COURT:  Mr. Vokey?

21          MR. VOKEY:  Your Honor, I -- I think that's fine,

22  except I -- I still don't think it goes far enough.  The jurors

23  may be confused as to whether a court-martial is also an

24  investigation, which we in the courtroom know it's not; it's a

25  legal proceeding.

1      I don't know that the jurors know that, and they're

2  going to confuse that with being an investigation.  So I think

3  the instruction as written -- as you said, that "the official

4  proceeding is defined only as Department of the Navy

5  court-martial and not investigations," would be appropriate.

6          Otherwise the jury may still be left with, "Well, is

7  a court-martial investigation" -- you know, and they argue

8  that.

9      (Judge confers with law clerk.)

10          THE COURT:  So explain to me, Mr. Vokey, and then

11  I'll ask Mr. Gee -- explain to me -- so under the -- under

12  the -- or, Mr. Schwarz, whoever wants to talk.

13          So under Count Two they have -- you have to prove

14  that the defendant knew of or foresaw an official proceeding.

15  And we know that that means he had to know of or foresee a

16  Department of the Navy court-martial.

17          He had to engage in conduct which constituted a

18  substantial step towards the commission of that crime, of

19  obstruction of that official proceeding.  He had to act

20  corruptly, and then interfere with the due administration of

21  justice, so...

22          But the law also says it doesn't -- the court-martial

23  did not have to be pending or about to be instituted at the

24  time of the offense.

25          So if a defendant, let's say -- not -- not

1    Captain Nettleton, but a hypothetical defendant -- let's say he

2    knew or foresaw that there would be a court-martial down the

3    line and he knew that what he was getting ready to do was

4    likely to affect it, and engaged in conduct which constituted a

5    substantial step -- what if that substantial step is he didn't

6    cooperate with the investigation or he told the investigator

7    something that was not true, or something like that?

8              I'm -- it's a little -- and it's probably maybe just

9    inherent in the law.  But what's the line of demarcation there

10   that the law would understand -- or that I would understand?

11             MR. VOKEY:  Sir, because the jury is asking for what

12   "official proceedings" means.

13             THE COURT:  Right.

14             MR. VOKEY:  And "official proceedings" do not

15   include -- well, what are these official proceedings?  The

16   official proceedings in Count Two is a court-martial.

17             THE COURT:  Right.

18             MR. VOKEY:  So that's what they're asking us to

19   define.  And they're saying, "And do official proceedings

20   include investigations?"

21             So that's why I think -- I think your -- your

22   instruction to the jury is fine, although I -- I'm concerned

23   that the jurors may not understand what a court-martial is.

24   And that's why I asked for the "and not an investigation"

25   clarifier at the end.

1          THE COURT:  All right.  Mr. Gee, you get one more

2     chance to talk to me and then I'll decide what we're going to

3     do.

4          MR. GEE:  Thank you, Your Honor.

5          I think the jurors' question shows that they know

6     what a court-martial is.  Our concern about -- because they're

7     asking about this other matter.

8          Our concern is that in answering it in a different

9     way than the Court -- the Court proposed -- for example, with

10    Mr. Vokey's details -- it could have the exact impact the Court

11    just expressed.

12         For example, while an investigation is still pending,

13    a defendant could foresee a court-martial -- in the setting of

14    a hypothetical world, he could, say, murder the star witness

15    before NCIS investigators could interview him.

16         That would be obstructing an investigation and

17    obstructing a foreseen court-martial.  So I think the

18    importance is to answer the jury's question about what the

19    official proceeding is without doing it in a way that could

20    confuse the "foresee an official proceeding" element of this

21    count.

22         MR. VOKEY:  Sir, I -- I change my position.  I think

23    your instruction is fine.  I think that would be sufficient.

24         THE COURT:  Okay.  Sounds good to me.

25         All right.  Let me -- let me just write it out, and

1  then I'll write it on the -- I think it's fine.  I think -- I

2  think it's fine.  And I'd be a little bit reluctant to start

3  talking about investigations and so forth.

4        I think this will tell the jury -- because if they're

5  doing their job, which they appear to be, they'll plug in --

6  they'll plug in Navy -- Department of Navy court-martial into

7  official proceeding and they'll know that's what it is, so --

8  and they -- all right.  So let me try this.

9        And just so I'm right about this, the "official

10  proceeding" language in that part of it is only pertinent to

11  Count Two; is that correct?

12        MR. GEE:  That's correct.  And that's why we think it

13  definitely would be wise to direct your answer to that.

14        THE COURT:  "I assume you are referring to Count Two

15  (Jury Instruction No. 10).  Under Count Two, 'official

16  proceedings' is defined only as a 'Department of the Navy

17  court-martial.'"

18        Acceptable, Mr. Vokey?

19        MR. VOKEY:  Acceptable, sir.

20        THE COURT:  Acceptable to the government?

21        MR. GEE:  Yes, Your Honor.  Thank you.

22        THE COURT:  I did not include the reference to Jury

23  Instruction No. 10.  I think it's fine without it.

24        "I assume you are referring to Count Two.  Under

25  Count Two, 'official proceedings' is defined only as a

 1  'Department of the Navy court-martial.'  Judge Corrigan,

 2  1/16/20, at 2:03 p.m."

 3          That's acceptable to the government?

 4          MR. GEE:  Yes, Your Honor.

 5          THE COURT:  Acceptable, Mr. Vokey?

 6          MR. VOKEY:  It is.

 7          THE COURT:  All right.  That -- a copy will be

 8  Court's Exhibit 2.

 9          Ms. Diaz, if you'll make a copy of Court Exhibit 2

10  and then return the original to the jury.

11          COURTROOM DEPUTY:  Yes, sir.

12      (Court's Exhibit 2 received into evidence.)

13          THE COURT:  All right.  We're in recess.

14          COURT SECURITY OFFICER:  All rise.

15      (Recess from 2:04 p.m. to 5:03 p.m.; all parties present.)

16          THE COURT:  All right.  All counsel and parties are

17  present.  The jury has informed us that they wish to go home

18  for the day.

19          And so I'm going to bring them out and instruct them

20  and let them go on their way.  And they'll be resuming at

21  9 o'clock tomorrow morning.

22          Let's have the jury, please.

23          COURT SECURITY OFFICER:  All rise for the jury.

24      (Jury enters, 5:04 p.m.)

25          COURT SECURITY OFFICER:  Please be seated.

1       THE COURT:  I can see up in the top row you're not

2   sure where to sit, because you're -- but that's all right.

3   You're fine.

4       So I've been informed that you are ready to go home

5   for the day.  And that's perfectly fine.  And I appreciate your

6   hard work.  And so I'm going to go ahead and turn you loose.

7       I will ask you to be back in the jury room ready to

8   begin deliberations at 9 o'clock tomorrow morning, 9 o'clock.

9       And the way that will work is this, you'll start to

10  come in at 8:45, or whatever, and then you have to wait until

11  everybody gets there before you can start.  But I'm going to

12  ask that you start by 9 o'clock, so make sure you get here in

13  time to get organized.

14      We will not bring you back into court or anything.

15  You'll just go straight to the jury room.  And when everybody

16  gets there, then you can start talking about the case again and

17  resume your deliberations.  And it will be similar to today, in

18  terms of how the schedule would go.

19      And so I need to instruct you again.  And I know

20  you're tired of hearing me, but -- we're in a little bit of a

21  different place here, but the rules still apply.

22      So while you're deliberating, of course, you're

23  talking about the case.  And that's exactly what you should be

24  doing.

25      But once you leave here tonight, go through that

1   door, nothing about the case.  Don't talk to anybody.  Don't

2   let anybody talk to you.  Don't talk to your other jurors.

3   Even on the way out to the car, don't talk about the case at

4   all.

5            And don't do any of your own research.  Don't read

6   any media.  Don't look at any social media.  Just nothing about

7   the case until you come back.

8            Everybody gets together at 9 o'clock tomorrow

9   morning, all 12 of you are there, and then you start your

10  deliberations.

11           Could I see who the foreperson is, please?

12           FOREPERSON:  (Hand raised.)

13           THE COURT:  All right, ma'am.  Thank you.

14           And will you please wait until everybody is there

15  before we get started at 9 o'clock?

16           Thank you so much.

17           And so that's the way it will go.  And all we can do

18  is thank you for your service.  Obviously you're -- you're

19  being diligent.  And there's no time limit on your

20  deliberations.  That's entirely up to you.

21           So we will just await your decision when you're able

22  to make it.

23           Is there any -- any problems?  Everybody okay?

24      (No response.)

25           THE COURT:  Okay.  So I'm going to send you -- send

1  you on your way, and if everybody will be back in the jury room

2  ready to start deliberating at 9 a.m.

3         Thank you, ladies and gentlemen.

4         COURT SECURITY OFFICER:  All rise for the jury.

5    (Jury exits, 5:07 p.m.)

6         COURT SECURITY OFFICER:  Please be seated.

7         THE COURT:  All right.  And I'll go up and speak to

8  the alternates in a moment and tell them essentially the same

9  thing.

10         So you're off duty until 9 o'clock tomorrow, and then

11  you're back on a five-minute call.  I will ask you to remain in

12  the courtroom just for a few minutes, let the jury pass

13  through, before everybody leaves.  I'll appreciate that.

14         Anything else from the parties?

15         All right.  I do not --

16         MR. LENAMON:  Judge.

17         THE COURT:  I'm not going to --

18         MR. LENAMON:  I just have one issue, Judge.

19         THE COURT:  Yeah.

20         MR. LENAMON:  This may be the last time that they

21  come out for a break or anything like that.  I'm a little

22  concerned with the Court asking the question, "Are there any

23  problems?"

24         You know, there's no indication that there are any

25  problems.  And I have concerns that that could open Pandora's

1  box in the courtroom, so -- I understand that the Court is the

2  referee of these proceedings and has great deference when it

3  comes to those kind of questions, but I just wanted to voice

4  the defense's concern on that issue.

5         THE COURT:  Yeah.  Gosh, I think that's misplaced.  I

6  mean, all I was asking them was logistical problems.  I

7  certainly wasn't asking about their deliberations.  So I -- I

8  don't share your concern.  I really don't.

9         And, of course, they said none anyway.  So I just --

10  I'm not concerned about that at all.

11         All right.  So everybody is adjourned until

12  9 o'clock.  We will not convene court in the morning.  We'll

13  just assume they're deliberating.

14         Ms. Diaz will let you know that they are there and

15  have begun their deliberations, and then we're just on a

16  five-minute call after that.

17         All right?

18         All right.  We're in recess.

19         COURT SECURITY OFFICER:  All rise.

20     (The proceedings adjourned at 5:09 p.m.)

21                      - - -

22

23

24

25

### CERTIFICATE

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


     I hereby certify that the foregoing transcript is a true and correct computer-aided transcription of my stenotype notes taken at the time and place indicated herein.


     DATED this 16th day of January, 2020.




     s/Shannon M. Bishop
     Shannon M. Bishop, RDR, CRR, CRC