IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,     Jacksonville, Florida

    Plaintiff,          Case No. 3:19-cr-1-J-32PDB

vs.                 January 17, 2020

JOHN R. NETTLETON,       9:02 a.m.

    Defendant.        Courtroom No. 10D

_____

JURY TRIAL
(VOLUME IX)
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE

COURT REPORTER:

       Shannon M. Bishop, RDR, CRR, CRC
       221 North Hogan Street, #150
       Jacksonville, FL  32202
       Telephone:  (904)549-1307
       dsmabishop@yahoo.com

    (Proceedings reported by mechanical stenography;
transcript produced by computer.)

<u>A P P E A R A N C E S</u>

GOVERNMENT COUNSEL:

        **TODD GEE, ESQ.**
        **PETER MARSHALL NOTHSTEIN, ESQ.**
        US Department of Justice
        1400 New York Avenue NW
        Washington, DC  20005

DEFENSE COUNSEL:

        **COLBY VOKEY, ESQ.**
        The Law Firm of Colby Vokey, P.C.
        6924 Spanky Branch Court
        Dallas, TX  75248

        **TERENCE LENAMON, ESQ.**
        Terence Lenamon P.A.
        245 SE 1st Street, Suite 404
        Miami, FL  33131

        **DANIEL SCHWARZ, ESQ.**
        Daniel Schwarz, P.A.
        245 SE 1st Street, Suite 404
        Miami, FL 33131

# T A B L E   O F   C O N T E N T S

Page No.

PROCEEDINGS:

Verdict......................................... 11
Jurors excused................................. 17

# N O   E X H I B I T S   R E C E I V E D

1            P R O C E E D I N G S

2    January 17, 2020                          9:02 a.m.

3                          - - -

4            COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Timothy J. Corrigan presiding.

7            Please be seated.

8            THE COURT:  Good morning.

9            Just to keep you-all informed about anything that has

10   to do with the jury, last night Juror No. 2, on her way out,

11   mentioned to Ms. Diaz that she was concerned that -- she felt

12   like the camera crews out there were scrambling when they

13   walked out to film them.

14           And I don't -- my impression is she wasn't -- she was

15   reporting it because we told her to report anything that was

16   out of the ordinary.  I didn't -- I don't have the impression

17   that she was overly concerned.

18           But I think probably what happened was when they were

19   released last night, at 5:00 -- I think they all kind of walked

20   out together and, when the camera crew saw a bunch of people

21   walking out together, I think they probably thought they were

22   some of the parties, or something like that, and they kind of

23   ran to get their cameras.  But I don't think any filming was

24   done, at least I'm not aware of any.

25           And so this morning I asked the lead court security

1   officer to remind the camera crews that they were not to take

2   any pictures of the jurors.  And he said they had been very

3   cooperative, and he expected their cooperation when he reminded

4   them of that.

5        I also have asked him to -- as he sees jurors exiting

6   the building, to have court security officers escort them off

7   the -- you know, out of -- out of the limelight there.

8        And so those are the steps I've taken.  I don't think

9   it was a big deal, but I wanted to make you aware of it.

10       I'm -- I thought about whether we ought to circle

11  back to No. 2, but I -- I think she was just reporting it out

12  of duty, not necessarily out of concern.  So I'm kind of

13  inclined just to leave it and -- and to -- but I'm open to some

14  suggestion on that.

15       So that's what's going on.

16       Mr. Gee, any wisdom from the government?

17       MR. GEE:  No, Your Honor.

18       THE COURT:  Okay.  Mr. Vokey?

19       MR. VOKEY:  I say leave it, too, sir.

20       THE COURT:  Okay.  Well, are they all --

21       COURTROOM DEPUTY:  Yes, sir.

22       THE COURT:  Okay.  They're in deliberations.  I'll

23  ask you to be on a five-minute call.  If we get to the lunch

24  hour, I'll give you a period of time to be out of touch.  But

25  other than that, we'll wait for the call of the jury.

1          COURT SECURITY OFFICER:  All rise.

2     (Recess from 9:05 a.m. to 10:36 a.m.; all parties

3  present.)

4          COURT SECURITY OFFICER:  All rise.  This Honorable

5  Court is now in session.

6          Please be seated.

7          THE COURT:  I wanted to follow up with you-all on the

8  matter I discussed this morning with you regarding the camera

9  crews and photographers.

10          The -- at my request, the court security officers

11  went out and -- to see if there were any either camera crews or

12  photographers out there today, to make sure that they were

13  understanding that they were not to take pictures of the

14  jurors.  And I don't think there are any media camera crews out

15  there.

16          But the court security officers did interact with one

17  photographer who advised that he had been hired -- he was -- he

18  was working for the Tur family, or for the Tur family lawyer.

19  It's not -- it wasn't clear about that.

20          And, of course -- first of all, I have great

21  sensitivity to the Turs' family situation.  I am so sorry for

22  their loss.  And I understand this is a difficult, difficult

23  thing for all involved.  I really do.

24          But I also have to make sure that all of the

25  protocols that we have in place to have a fair trial are

1  respected and that no jurors, especially, are subject to being

2  photographed and -- I don't know what happens to those

3  photographs once -- once they're taken, but, of course, there

4  are possibilities that would be unacceptable.

5          And so I thought maybe, Mr. Gee -- I'm assuming that

6  the government is in contact with the Tur family.  I'm assuming

7  that the government -- I've seen Mr. Phillips here.

8          I think he represents the family; is that correct?

9          MR. GEE:  It is, Your Honor.

10         THE COURT:  Okay.

11         MR. GEE:  Obviously we don't know anything about

12  photographers.

13         THE COURT:  Okay.  I just thought it would be a good

14  idea if you would use your good offices to just make sure

15  that -- inadvertently, I would be sure, but that anybody who is

16  representing the Tur family, or is employed either by them or

17  their attorney, that they're conducting themselves

18  appropriately, and, at minimum -- at minimum, that would mean

19  to me that no photography of the jurors would be appropriate.

20         And so I -- I debated about whether to just call

21  Mr. Phillips, who -- who I'm, of course, familiar with.

22     (Knock on jury room door.)

23         COURT SECURITY OFFICER:  They want to take a break.

24         THE COURT:  Okay.  Come here, Ms. Parks, please.

25         Let's hold on a second, Mr. Gee.

1          Off the record.

2     (Judge confers with court security officer.)

3          THE COURT:  All right.  So let's go ahead and let --

4     while I'm talking here, go ahead and let them -- okay.  Thank

5     you.

6          COURT SECURITY OFFICER:  Yes, sir.

7          THE COURT:  The jury just wants to take a break.  And

8     I'm just going to have the court security officers escort them

9     at this time.

10          So, anyway, Mr. Gee, I don't want to make more out of

11     this than there is.  I don't want -- you know, it's not --

12     there's no intimation by me that anything untoward is

13     happening.  But I want to make sure that stays the case.

14          And I was just a little bit surprised that there

15     would be a photographer who had been employed by either the

16     family or by the lawyer.

17          And I don't really know what pictures would be out

18     there that would -- that would be something that would be -- I

19     guess I just don't understand exactly.

20          And maybe we have -- maybe the message got mixed.  I

21     don't know.  But if you wouldn't mind, please, using your

22     offices to discuss with relevant persons and just make sure

23     that -- that everything is being done the way it should be

24     done, I would appreciate it.

25          MR. GEE:  We'll have that -- excuse me, Your Honor.

1    We're happy to talk with them.

2         THE COURT:  Okay.  Good.  All right.

3         Mr. Vokey, do you want to be heard?

4         MR. VOKEY:  No, sir.

5         THE COURT:  Okay.  All right.  The jury is taking a

6    break.  I'm going to ask everybody to stay in the room a moment

7    after I leave to make sure that they've been escorted out.

8         I will remind all persons involved in the matter and

9    interested in the case that there can be no contact with any

10   jurors, there can be no interaction with them, there can be

11   no -- you should not be in close proximity to them.  And

12   certainly they should not be photographed or identified in any

13   way.

14        And so I know everybody will follow that instruction.

15   And, obviously, there's good reasons for it.  What we don't

16   want to have happen is that something untoward happen that

17   could jeopardize the case or jeopardize this trial.

18   Everybody's put too much into it.

19        And we need for this jury to be able to deliberate in

20   a fair, impartial manner, in an atmosphere that is conducive to

21   reason and deliberation.  And I'm going to count on everybody

22   to make sure that that is exactly what happens.  And I'll be

23   doing everything I can.

24        So I appreciate everybody's cooperation.  And we are

25   in recess.

1          COURTROOM DEPUTY:  All rise.

2          THE COURT:  Please remain just for a few minutes

3   until -- until the -- until Ms. Diaz tells you that they're

4   clear.  Okay?

5          Thank you.

6      (Recess from 10:42 a.m. to 12:39 p.m.; all parties

7   present.)

8          COURT SECURITY OFFICER:  All rise.  This Honorable

9   Court is back in session.

10          Please be seated.

11          THE COURT:  I'm informed that the jury has reached a

12   verdict.

13          Let's have the jury, please.

14          Before -- I'm sorry, Ms. Parks.

15          Before you do that, I would remind everybody in the

16   courtroom that, of course, regardless of what the verdict is,

17   we do need to maintain the decorum that's proper in a

18   courtroom.  And I'll appreciate everybody remembering that when

19   the verdict is read.

20          After the verdict is read, there will be a --

21   depending on what it is, there will be a few things the Court

22   has to do, and then we'll -- then we'll adjourn.  And we'll do

23   so in an orderly way.

24          So I appreciate everybody's cooperation in that

25   regard.

1          Let's have the jury, please.

2          COURT SECURITY OFFICER:  All rise for the jury.

3      (Jury enters with verdict, 12:41 p.m.)

4          COURT SECURITY OFFICER:  Please be seated.

5          THE COURT:  Madam Foreperson, I'm told that the jury

6  has reached a verdict; is that correct?

7          FOREPERSON:  Yes, sir.

8          THE COURT:  And I don't want you to tell me what the

9  verdict is.  But was the verdict unanimous?

10          FOREPERSON:  Yes, sir.

11          THE COURT:  All right.  If you'd hand it to

12  Ms. Parks, please.

13          And, ladies and gentlemen, it will take me a moment

14  to review the verdict.  And then I will read it out loud and

15  I'll ask you to listen carefully, because I'll be asking each

16  of you if this is the verdict that you actually agreed to.

17          All right?

18      (Affirmative response.)

19          THE COURT:  All right.  I'm now going to -- we call

20  it publishing the verdict -- read the verdict aloud.

21          In the United States District Court, Middle District

22  of Florida, Jacksonville Division, *United States of America*

23  *versus John R. Nettleton*, Case No. 3:19-cr-1, Verdict:  With

24  regard to Count One of the indictment, which charges John R.

25  Nettleton with obstruction of justice by knowingly engaging in

1  misleading behavior towards another person with the intent to

2  hinder, delay, or prevent the communication to federal law

3  enforcement officers of information relating to the commission

4  and possible commission of a federal offense, we, the jury,

5  find the defendant guilty.

6        With regard to Count Two of the indictment, which

7  charges John R. Nettleton with obstruction of justice by

8  corruptly obstructing, influencing, or impeding official

9  proceedings, or attempting to do so, we, the jury, find the

10  defendant guilty.

11        With regard to Count Three of the indictment, which

12  charges John R. Nettleton with the concealment of material

13  facts, we, the jury, find the defendant guilty.

14        With regard to Count Four of the indictment, which

15  charges John R. Nettleton with the falsification of records

16  with regard to the Navy Blue communication sent to Navy

17  officials, we, the jury, find the defendant not guilty.

18        With regard to Count Five of the indictment, which

19  charges John R. Nettleton with falsification of records with

20  regard to e-mails to Admiral Mary Jackson and Captain

21  Christopher Gray, we, the jury, find the defendant guilty.

22        With regard to Count Six of the indictment, which

23  charges John R. Nettleton with making a false statement by

24  stating to Executive Officer Alonza Ross that Christopher Tur

25  did not come to the defendant's residence on or about

1    January 9th, 2015, after the Hail and Farewell party at the

2    Officer's Club/Bayview, we, the jury, find the defendant

3    guilty.

4            With regard to Count Seven of the indictment, which

5    charges John R. Nettleton with making a false statement by

6    stating to Executive Officer Alonza Ross that Christopher Tur

7    had come to the defendant's residence on or about January 9th,

8    2015, but that he had not come inside, we, the jury, find the

9    defendant guilty.

10           With regard to Count Eight of the indictment, which

11   charges John R. Nettleton with making a false statement by

12   stating to Admiral Mary Jackson and Captain Christopher Gray

13   that the defendant and Lara Sabonash, formerly Lara Tur, were

14   not having an affair, we, the jury, find the defendant not

15   guilty.

16           So say we all this 17th day of January 2020, signed

17   by the foreperson.

18           What I'm going to do now, ladies and gentlemen, I'm

19   going to call you just by your juror number, 1, 2, 3, and I'm

20   going to ask you to stand and tell me whether this is the

21   verdict that you agreed to.

22           Juror No. 1, is this your true verdict?

23           FOREPERSON:  Yes, Your Honor.

24           THE COURT:  Juror No. 2, is this your true verdict?

25           JUROR:  Yes, sir.

1     THE COURT:  Juror No. 3, is this your true verdict?

2     JUROR:  Yes, Your Honor.

3     THE COURT:  Juror No. 4, is this your true verdict?

4     JUROR:  Yes, Your Honor.

5     THE COURT:  Juror No. 5, is this your true verdict?

6     JUROR:  Yes, sir.

7     THE COURT:  Juror No. 6, is this your true verdict?

8     JUROR:  Yes, Your Honor.

9     THE COURT:  Juror No. 7, is this your true verdict?

10    JUROR:  Yes, Your Honor.

11    THE COURT:  Juror No. 8, is this your true verdict?

12    JUROR:  Yes, Your Honor.

13    THE COURT:  Juror No. 9, is this your true verdict?

14    JUROR:  Yes, Your Honor.

15    THE COURT:  Juror No. 10, is this your true verdict?

16    JUROR:  Yes, sir.

17    THE COURT:  Juror No. 11, is this your true verdict?

18    JUROR:  Yes, Your Honor.

19    THE COURT:  Juror No. 12, is this your true verdict?

20    JUROR:  Yes, Your Honor.

21    THE COURT:  The clerk will record the verdict.

22    Ladies and gentlemen, your jury service has come to

23    an end.  There could be no doubt that you have done your duty

24    to the best of your ability and were extremely vigilant, and

25    really served in the highest traditions of jury service.

1      Your attendance, your promptness, your diligence, and

2  your obvious care is appreciated by the Court and by the

3  public.

4      Because it is -- without people like you willing to

5  come in and make what are hard decisions -- they're very hard

6  decisions -- we would not have our jury system.  And this is

7  exactly the system that our founders put forward.  And you are

8  the embodiment of it.  And for that you have our gratitude.

9      Now, what will happen next is that -- in a moment,

10  after I finish speaking with you, I'll ask you to return into

11  the jury room and I will -- after I talk with the parties for a

12  few minutes, I'll come in and speak to you and thank you

13  personally.

14      I'm going to ask you to stay in the jury room until I

15  come in so that we can -- so I can thank you personally, and

16  then we'll make sure that you're escorted out and so forth.

17      So if you could just stay in the jury room just for a

18  few minutes until I can come -- come in.

19      I will tell you, though, that the rules no longer

20  apply.  That is, after you leave here today, you can talk about

21  the case.  You can have others talk to you about it.  You can

22  read articles about it, if you care to.  You can -- there are

23  no more restrictions on you.  So there's no rules on you.

24  There's no law on you.

25      Here's my recommendation, that what went on in the

 1   jury room should stay in the jury room.  That's my

 2   recommendation to you.

 3          There -- it's possible that -- it's possible you

 4   might be contacted by members of the media or something else.

 5   We -- there's not -- there's not a legal prohibition against

 6   them trying to contact you, but you don't have to talk to them

 7   if you don't want to.  And my recommendation is you just say,

 8   "I don't have anything to say."

 9          That's just a recommendation, though.  It is not

10   my -- I don't have the authority to tell you to do that.

11          And my recommendation is, if others, who may have

12   opinions about it or who want to talk to you about it -- you

13   know, they -- you were there and they weren't.

14          And so my recommendation is you just say, "Thank you

15   very much, but I don't want to talk about it."

16          But that's only a recommendation.  There's no -- no

17   law that says that.

18          I will tell you that none of the lawyers or the

19   parties will be in contact with you, because the rules do

20   prohibit that.

21          And if you were to have any contact from someone that

22   you felt was either inappropriate or that was not welcomed by

23   you, all you'd have to do is let us know and we'll -- we'll be

24   on it.  Okay?

25          I don't think that will happen.  But if you -- if at

1  any time you were ever to feel uncomfortable, or that somebody

2  was trying to engage you in a way that you don't wish to be

3  engaged, we -- please let us know and we'll -- we'll be on it.

4  Okay?

5           So those are my remarks to you.  I'm going to let

6  both you and the alternates go back into the jury room.  And I

7  will be in in just a few minutes to, again, thank you for your

8  service, and then we will make sure that you're properly

9  escorted out.

10          And, again, thank you very much, ladies and

11  gentlemen.

12          COURT SECURITY OFFICER:  All rise for the jury.

13      (Jurors excused.)

14          THE COURT:  And I'll allow the alternates to go in

15  with them, too.

16          The record will reflect that the alternates, of

17  course -- y'all be can seated.

18          The record will reflect that, of course, the

19  alternates have not been interacting with the jury at all.

20  They've been kept separate from the jury.

21          But for purposes of escorting them out, I'm going to

22  allow the alternates to be with the jury in the jury room as we

23  escort them out.

24          So they're -- once -- once the court records the

25  verdict, the Court will be entering a judgment based on the

1   jury's verdict adjudicating guilt, where the jury found guilt;

2   adjudicating Captain Nettleton not guilty on those that they

3   found him not guilty on.

4          The process then, sir, is that the probation office

5   will begin the process of a presentence report.  That will lead

6   to your sentencing, which will come in about 90 days.  It's not

7   been scheduled yet.

8          Both you and your lawyers will have input into that

9   process.  And it's -- there's a whole procedure that's

10  undertaken.  But that will be made known to you.

11         And we're looking at about a 90-day period.

12  Sometimes it gets continued farther than that, depending on

13  certain situations.  But that's the general time frame.

14         Mr. Gee, the government -- I checked -- as part of my

15  routine, I did check on the order setting conditions of release

16  for Captain Nettleton that was entered by Judge Barksdale on

17  January 9th of 2019.  It was a release on personal

18  recognizance.

19         There were some travel restrictions and some witness

20  contact restrictions.  And Captain Nettleton had surrendered

21  his passport.  And there's some standard conditions, as well.

22         Is the government satisfied that those continued

23  conditions of release would be appropriate in this case?

24         MR. GEE:  Yes, Your Honor.

25         THE COURT:  So, Captain Nettleton, you, of course,

1    today will leave the courthouse under the same order of release

2    that you have been under the entire time.  You'll have the same

3    restrictions.  And the pretrial services officer will still be

4    in charge of your case.

5            But I would remind you that any violation of those

6    conditions, any -- any travel that's unauthorized, without --

7    without authorization, any -- any violation that's material on

8    this order could result in your immediate remand into the

9    custody of the marshals.

10           I certainly am not expecting that.  I'm certainly not

11   worried that any of that would happen.  But I just want us to

12   understand each other.

13           And then you would, of course, be required to appear

14   for your sentencing hearing as it's scheduled.  And, of course,

15   your lawyers will let you know about that.

16           Obviously the rules and laws governing the matter

17   that -- that come into play after a verdict and the judgment

18   have been entered will apply.  And I assume that all parties

19   will govern themselves accordingly.

20           Anything else?

21           COURTROOM DEPUTY:  No, sir.

22           LAW CLERK:  No, sir.

23           THE COURT:  Mr. Gee, is there anything further from

24   the government at this time?

25           MR. GEE:  No, Your Honor.  Thank you.

1          THE COURT:  Mr. Vokey?

2          MR. VOKEY:  No, Your Honor.

3          THE COURT:  All right.  So what I would like to do is

4   this, I would like for everyone to remain in the courtroom

5   while Captain Nettleton and his lawyers leave.  And if his

6   family wants to accompany him, of course, they can.

7          I'd like to have that happen first, and let -- let

8   you-all leave the courtroom and the courthouse.  And then

9   I'll -- of course, everybody else will be free to leave.

10          So, Captain Nettleton, you and your counsel and your

11   family may withdraw at the moment.

12          THE DEFENDANT:  Yes, sir.

13          MR. LENAMON:  Thank you, Judge.  It was a pleasure.

14          THE COURT:  Yes, sir.

15      (Defendant and defense counsel exit the courtroom.)

16          THE COURT:  May I ask those of you who will remain in

17   the courtroom -- I'll ask you if you would please remain for

18   another five minutes, to give Captain Nettleton and his family

19   and his lawyers time to exit the courthouse, and then, of

20   course, you're free to go about your business.

21          I'm going to go in and speak with the -- the jury.

22   And then, of course, I'll ask -- I'll be happy to -- I'm -- I'm

23   happy to have you-all leave once they've cleared the space.

24          So, thank you, ladies and gentlemen.  The Court will

25   be in recess.

1              COURT SECURITY OFFICER:  All rise.

2         (The proceedings concluded at 12:57 p.m.)

3                              - - -

## CERTIFICATE

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


        I hereby certify that the foregoing transcript is a true

and correct computer-aided transcription of my stenotype notes

taken at the time and place indicated herein.


        DATED this 17th day of January, 2020.




                    s/Shannon M. Bishop
                    Shannon M. Bishop, RDR, CRR, CRC