UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:19-cr-00001-TJC-PDB

UNITED STATES OF AMERICA,

v.

JOHN R. NETTLETON,
    Defendant.
_____/

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29**

Defendant JOHN R. NETTLETON, by and through below counsel, renews his previously filed motions pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on all counts of the Indictment. Defendant incorporates all of the arguments made at the close of the Government's case and at the close of the evidence, and further states the following:

Under Rule 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. Proc. 29(a). Under Rule 29, the "evidence supports a conviction, if, viewed in the light most favorable to the government, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Graf*, 610 F.3d 1148, 1166 (11th Cir. 2010) (citing *United States v. Stoddard,* 150 F.3d 1140, 1144 (9th Cir. 1998)). But

> a conviction based on speculation and surmise alone cannot stand. *United States v. Wiley,* 846 F.2d 150, 155 (2d Cir.1988). In particular, the government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Macklin,* 671 F.2d 60, 65 (2d Cir.1982). Therefore, the government must do more than introduce evidence "at least as consistent with innocence as with guilt." *United States v. Mulheren,* 938 F.2d 364, 372 (2d Cir.1991) (quoting *United States v. Mankani,* 738 F.2d 538, 547 (2d Cir.1984)).

1

*United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994); *see also United States v. Blair,* 661 F.3d 755, 767 (4th Cir. 2011) (vacating obstruction of justice conviction under 18 U.S.C. § 1503 where "the government's arguments rest on mere speculation.").

"A criminal defendant who challenges the sufficiency of evidence shoulders a heavy burden, but not an impossible one." *United States v. Jones*, 383 F.3d 107, 111 (2d Cir. 2004).

As explained, the Government's evidence for Counts 1, 2, 3, 5, 6, and 7 is legally insufficient to sustain a conviction.

### I. The Government failed to prove Obstruction of Justice (Counts 1 and 2)

#### a. The evidence is insufficient to sustain a conviction under § 1512(b)(3)

To establish a violation of 18 U.S.C. § 1512(b)(3) - Count 1, the Government must prove that Defendant 1) knowingly and willfully engaged in misleading conduct toward another person, and 2) acted with the intent to hinder, delay, or prevent the communication of information to a Federal law enforcement officer, and 3) that the information related to the commission or possible commission of a Federal offense. According to the indictment, the relevant law enforcement officers were NCIS agents or members Naval Station Guantanamo Bay Security Department.

Even if the Government's evidence at trial is credited, it is legally insufficient to sustain an obstruction of justice conviction for Count 1. § 1512(b)(3) requires "a specific intent to interfere with the communication of information." *United States v. Veliz*, 800 F.3d 63, 73 (2d Cir. 2015) (*quoting United States v. Genao,* 343 F.3d 578, 586 (2d Cir.2003)). But the Government has failed to present anything more than speculation that Defendant specifically intended to interfere with the communication of information related to a federal offense.

The bulk of the Government's case for Count 1 relates to Defendant's allegedly false or misleading statements to Admiral Mary Jackson, Admiral Christopher Gray, and Captain Alonza Ross. But none of these persons (at least to Defendant's knowledge) were actually investigating Defendant for the commission of a federal offense at the time of his purportedly obstructive conduct. And the Government presented no evidence that Defendant knew or surmised that the contents of his communications to these persons would be provided to any NCIS agent or Guantanamo Bay security personnel. Thus, there was no evidence that Defendant in any way sought to hinder, delay, or prevent the communication of information to federal law enforcement officers.

In short, the Government failed to show that Defendant acted with the intend to obstruct justice, and a judgment of acquittal should be granted on Count 1.

### b. The evidence is insufficient to sustain a conviction under § 1512(c)(2)

18 U.S.C. § 1512(c)(2) - Count 2, requires the Government to prove that 1) Defendant knew of or foresaw an official proceeding, and knew that his actions were likely to affect it; 2) Defendant engaged in conduct which constituted a substantial step toward the commission of the crime of obstruction of an official proceeding; 3) Defendant acted corruptly, i.e., with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede, or obstruct the actual or foreseen official proceeding; and 4) the natural and probable effect of Defendant's conduct would be the interference with the due administration of justice.

Count 2 thus requires a nexus between Defendant's conduct and the alleged official proceeding. The nexus requirement demands that Defendant's conduct must have a relationship in time, causation, or logic with the official proceeding. *See, e.g.*, *United States v. Reich,* 479 F.3d 179, 185 (2d Cir. 2007). Here, the Government must show that Defendant contemplated a

particular official proceeding (in this case, a court martial) when he engaged in the alleged conduct, and that there is a nexus between this alleged conduct and the official proceeding. *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019).

While the Government presented certain testimony (for example, through Admiral Gray) that a person could be court martialed for violations of the Uniform Code of Military Justice (such as adultery, amongst other things), the Government failed to present evidence that Defendant actually committed any obstructive conduct in contemplation of a court martial. The Government didn't present evidence that Defendant knew his actions would affect any potential court martial.[1] There simply was no showing at trial that Defendant foresaw a court martial, that he believed his actions would affect a court martial, or that his actions were designed in any way to obstruct such a court martial.

---

[1] In conversations with Lara Sabonash that occurred after the subject incidents of January 2015, after Defendant had already been removed from Guantanamo Bay, Defendant and Mrs. Sabonash discussed the issue of whether their relationship could have any impact on Defendant's status in the Navy:

> **Q. In these same conversations, did you -- did he discuss with you that he might be facing potential UCMJ proceedings?**
>
> **A. No.  I don't -- I don't think he thought he was facing them.**

Testimony of Lara Sabonash, January 8, 2020 (emphasis added).

And later Mrs. Sabonash testified:

> Q. All right.  And you were asked whether Captain Nettleton mentioned whether he was facing any -- any court-martial or UCMJ stuff.  You said, "I don't think he thought he was facing any."
>
> A. Correct.

Testimony of Lara Sabonash, January 8, 2020

Of course, more than five years after the subject incidents, a court martial still has not been instituted. Essentially, the Government's case for Count 2 rests on the *mere possibility* that a court martial could have been instituted at some point, without any evidence that Defendant acted in relation to any foreseen court martial. Such evidence is not enough to satisfy the § 1512(c)(2) nexus requirement. *See, e.g., United States v. Young,* 916 F.3d at 387 (finding no violation of § 1512(c)(2) where there was no evidence that the defendant "was aware either that his conduct would affect a grand jury proceeding or that a grand jury or similar proceeding was impending" or that he "foresaw a specific grand jury investigation or that he designed his conduct to thwart such an investigation …")

Next, the Government failed to present any evidence that Defendant acted corruptly with the specific intent to obstruct any court martial. The term "corruptly" under § 1512 means to act with the purpose of wrongfully impeding the administration of justice. *See United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007). If Defendant didn't foresee a court martial, he couldn't possibly have acted corruptly with the intention to obstruct a court martial.

Additionally, the Government presented no evidence that Defendant intended to specifically obstruct a court martial, as opposed to, for example, merely obstructing a Department of the Navy investigation (the latter of which would not be an offense under § 1512(c)(2)).

Under these circumstances, the Government's evidence was insufficient to sustain a conviction, and acquittal should be entered on Count 2.

## II. The Government failed to prove a Scheme to Conceal Material Facts (Count 3)

Count 3, 18 U.S.C. § 1001(a)(1), charges Defendant with to falsifying and concealing the facts he allegedly knew about the circumstances surrounding the disappearance, injury, and death

of Mr. Tur. The Court instructed the jury that the Government must prove 1) Defendant concealed a fact by a trick, scheme, or device; 2) the fact was material; 3) the fact was within the jurisdiction of a Federal department or agency; 4) the Defendant had a legal duty to disclose the concealed fact; and 5) the Defendant acted knowingly and willfully.[2]

The Government failed to prove that Defendant had a legal duty to disclose any material facts which he purportedly concealed. Concealment cases require "a duty to disclose material facts on the basis of specific requirements for disclosure of specific information." *United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008). The specificity requirement is necessary to comply with Fifth Amendment due process concerns that persons have fair warning that their actions are illicit. In *Safavian*, the court reversed the defendant's 18 U.S.C. § 1001(a)(1) convictions because the purported duty to disclose was based on vague standards and principles that "give no indication of the particular facts or information an executive employee must disclose." *Id*. at 965. The standards at issue in *Safavian* "range from exceedingly vague—'Employees shall put forth honest effort in the performance of their duties, § 2635.101(b)(5)—to somewhat more descriptive—'Employees shall not use public office for private gain.' § 2635.101(b)(7). Only one has anything to do with disclosure. *See* § 2635.101(b)(11) ('Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.')." *Id*. at 964.

Similarly, the Government's reliance on vague Navy regulations as forming the basis for Defendant's legal duties for Count 3 is misplaced. The Government failed to present adequate evidence that Defendant had a specific legal duty to disclose any material facts which he

---

[2] Defendant had requested the Court to additionally instruct the jury that the Government must also prove that Defendant acted with the specific intent to mislead. Defendant contends that the Government has failed to prove that he acted with said intent to mislead as required under § 1001(a)(1).

purportedly concealed. Instead, the Government relies on vague and broadly-written Navy regulations, such as the Charge of Command. That document, which Admiral Gray discussed in some detail during his testimony, lays out the duties of commanding officers, including the duty of accountability, the requirement that a commander's conduct be exemplary, etc. But the Government didn't introduce evidence that specifically addresses Defendant's purported duty to disclose any of the facts which the Government claims he concealed as part of Count 3. As in *Safavian*, the Navy regulations at issue here give no indication of the particular facts that Defendant was required to disclose. Accordingly, these regulations cannot form the basis for a duty to disclose. Therefore, Defendant should be granted an acquittal on Count 3.

### III.   The Government failed to prove Falsification of Records (Count 5)

For Count 5, 18 U.S.C. § 1519, the Government must establish that Defendant knowingly altered, concealed, covered up, falsified, or made a false entry in a record, document, or tangible object - in this case emails to Admiral Mary Jackson and Captain Christopher Gray - with the intent to impede, obstruct, or influence the investigation of a matter within the jurisdiction of the Department of the Navy (specifically, the investigation into the circumstances surrounding the disappearance, injury, and death of Christopher Tur).

Again, the Government failed to prove the requisite intent to obtain a conviction on this count. The Government presented no evidence that Defendant had any intent to impede, obstruct, or influence the investigation into Mr. Tur's disappearance and death. Unlike NCIS investigators, neither Admiral Jackson nor Admiral Gray were personally investigating the disappearance and death of Mr. Tur. Nor did Admiral Jackson or Admiral Gray inform Defendant at any relevant time that he was suspected of being involved in Mr. Tur's disappearance and death. (As Admiral

Gray acknowledged, he had to be careful of what he asked Defendant because Admiral Gray never read Defendant his Article 31 rights.) Therefore, the Government hasn't proved that Defendant's actions were intended to have any impact on the subject investigation.

Because the Government failed to present evidence of Defendant's intent to impede, obstruct, or influence the investigation as noted herein, an acquittal is warranted on Count 5.

### IV. The Government failed to prove False Statements to a Federal Agency (Counts 6 and 7)

Count 6, 18 U.S.C. § 1001(a)(2), charges Defendant with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch by stating to Captain Ross that Mr. Tur did not go to the Defendant's residence on or about January 9, 2015 after the party at the Bayview.

Count 7, 18 U.S.C. § 1001(a)(2), charges Defendant with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch by stating to Captain Ross that Mr. Tur had come to the Defendant's residence on or about January 9, 2015, but that Mr. Tur had not come inside.

The Court instructed the jury that the Government must prove that 1) Defendant made the statement, as charged; 2) the statement was false; 3) the falsity concerned a material matter; 4) the Defendant acted willfully, knowing that the statement was false; and 5) the false statement was made or used for a matter within the jurisdiction of a department or agency of the United States. Jury Instruction No. 13.[3]

---

[3] Defendant had requested the Court to additionally instruct the jury that the Government must also prove that Defendant acted with the specific intent to mislead. Defendant contends that the Government has failed to prove that he acted with said intent to mislead as required under § 1001(a)(2).

8

Whereas NCIS was handling the investigation into the circumstances around Mr. Tur's death, Captain Ross wasn't actually investigating Defendant in any official capacity in relation to said circumstances. As Captain Ross' testimony makes clear, he wasn't at any time tasked with conducting an inquiry into Defendant's possible involvement in Mr. Tur's disappearance and death:

> Q. Now, did you speak with [Defendant] that Sunday further about events on the Friday night?
>
> A. I did.
>
> Q. Tell me about that.
>
> A. I was going through the day's events, I think it's later on after we'd found Tur and stuff and **I just arbitrarily asked him**, "Hey, did -- did he ever -- did he ever show up at your house?"  And he told me, no, he hadn't.

Testimony of Alonza Ross, January 8, 2020 (emphasis added).

> Captain Ross described a subsequent conversation as follows:
>
> Q. And after you finished that interview with NCIS, did you have another conversation with the defendant?
>
> A. Yes, I did.
>
> Q. Tell us about that conversation on January 15th.
>
> A. I come back and went over it again about that.  We were -- at the interview, and I said, "Hey, did he" -- again, I asked him, "Did Tur actually show up at your house?"
>
> And he said, "Well, yeah, he showed up there, but I didn't let him in."
>
> So now I'm thinking, Well, wait a minute, you told me he didn't show up twice.

Testimony of Alonza Ross, January 8, 2020.

These conversations between Defendant and Captain Ross were, essentially, conversations between colleagues; these were not official interviews or interrogations. Allowing a conviction to

9

be based on comments made by Defendant during such informal communications would result in situations where the reach of § 1001 sweeps too broadly. In such a situation, a person could potentially be criminally liable under § 1001 for false comments made during *any conversation* with *any person* so long as the matter related to the authorized functions of a federal department or agency. This would result in a nearly limitless reach to § 1001.

Lastly, Captain Ross wasn't an investigator with NCIS or any other agency, but instead was a subordinate officer to Defendant. Defendant was under no legal obligation to answer Captain Ross' questions, regardless of whether his answers were truthful or otherwise.

For these reasons, acquittals on Counts 6 and 7 are necessary.

WHEREFORE, for the reasons stated herein, as well as in Defendant's prior Rule 29 motions, this Court should grant a judgment of acquittal on all counts of conviction.

Submitted on Jan. 31, 2020, by

s/ Daniel Schwarz
Daniel Schwarz
FBN 84665
245 SE 1st Street, Suite 404
Miami, FL 33131
Phone: 305-900-0481
Fax: 305-503-6973
Daniel@danielschwarzlaw.com

Colby Vokey
Texas Bar No. 24043391
The Law Firm of Colby Vokey PC
6924 Spanky Branch Court
Dallas, TX 75248
Phone: 214-697-0274
Fax: 214-594-9034
Email: vokeylaw@colbyvokey.com

Terence Lenamon
Fla. Bar No. 970476
Terence Lenamon P.A.
245 SE 1st Street, Ste. 404
Miami, FL 33131
Phone: 305-373-9911
Fax: 305-503-6973
Email: terry@lenamonlaw.com

CERTIFICATE OF SERVICE

      I hereby certify that on Jan. 31, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, and thereby served on all interested parties.

                                              s/ Daniel Schwarz
                                              Daniel Schwarz