**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No. 3:19-cr-1-J-32PDB

JOHN R. NETTLETON

_____

**O R D E R**

This case is before the Court on Defendant John R. Nettleton's Motion for

Judgment of Acquittal (Doc. 129) and Motion for New Trial (Doc. 130). The

Government responded in opposition to each motion. (Docs. 137, 138).

In January 2020, Nettleton proceeded to trial on eight counts: obstruction

of justice in violation of 18 U.S.C. § 1512(b)(3) (Count One), obstruction of

justice in violation of § 1512(c)(2) (Count Two), concealment of material facts in

violation of § 1001(a)(1) (Count Three), falsification of records in violation of

§ 1519 (Counts Five and Six), and false statements in violation of § 1001(a)(2).

(Counts Seven and Eight).[1] After six trial days and a day and a half of

deliberations, the jury returned a guilty verdict on Counts One through Three

_____

[1] Nettleton was indicted on ten counts, but prior to trial the Government
dismissed Counts Six and Seven—also false statement counts. (Docs. 1, 100).
During trial, the Court amended the indictment so that Count Eight of the
indictment became Count Six, Count Nine became Count Seven, and Count Ten
became Count Eight. (Doc. 107). In this Order, the Court will refer to the count
numbers as amended.

and Five through Seven, and not guilty on Counts Four and Eight. (Doc. 127).

Nettleton moved for judgment of acquittal at the end of the Government's case-in-chief, (Doc. 109 at 134–62), and again at the close of the evidence, (Doc. 111 at 135–36). Both were denied. (Docs. 109 at 162; 111 at 136). Now, Nettleton again seeks judgment of acquittal under Federal Rule of Criminal Procedure 29(c), or a new trial under Rule 33.

## II. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

A post-verdict motion for judgment of acquittal is "an uphill climb." United States v. Nelson, No. 3:10-CR-23-J-32TEM, 2011 WL 3897959, at *1 (M.D. Fla. Sept. 6, 2011), aff'd, 712 F.3d 498 (11th Cir. 2013). The Court construes "the evidence presented at trial in the light most favorable to the government, and . . . draw[s] all reasonable factual inferences in favor of the jury's verdict." United States v. Henderson, 893 F.3d 1338, 1348 (11th Cir. 2018) (quotation marks omitted) (quoting United States v. Bergman, 852 F.3d 1046, 1060 (11th Cir. 2017)). "[The Court] will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." Id. (quotation marks omitted) (quoting United States v. Crabtree, 878 F.3d 1274, 1284 (11th Cir. 2018)).

**B. Motion for New Trial**

Federal Rule of Criminal Procedure 33, provides district courts discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A conviction blamed on an erroneous jury instruction should result in a new trial only where the court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." United States v. Joyner, 899 F.3d 1199, 1203 (11th Cir. 2018) (quoting United States v. Lopez, 590 F.3d 1238, 1247 (11th Cir. 2009)). District courts have broad discretion in formulating jury instructions and the accuracy of an instruction must be viewed in the context of the evidence and the entire jury charge. United States v. Gonzalez, 834 F.3d 1206, 1222 (11th Cir. 2016)

## III. DISCUSSION

Nettleton moves for acquittal or a new trial on every count for which he was convicted. The undersigned presided over the trial and previously denied relief on many of the issues Nettleton re-raises here. For that reason, the Court does not discuss in detail every argument raised.

**A. Motion for Judgment of Acquittal**

Nettleton moves for judgment of acquittal on all the counts for which the jury found him guilty. (Doc. 127). Only Nettleton's argument as to Count Three warrants discussion; all other grounds are summarily denied.

3

Count Three charges a violation of 18 U.S.C. § 1001(a)(1), which requires the Government to prove: (1) the Defendant concealed a fact by a trick, scheme, or device; (2) the fact was material; (3) the fact was within the jurisdiction of a federal department or agency; (4) the Defendant had a legal duty to disclose the concealed fact; and (5) the Defendant acted knowingly and willfully. Nettleton argues that he is entitled to acquittal on Count Three because "[t]he Government failed to present adequate evidence that Defendant had a specific legal duty to disclose any material facts which he purportedly concealed." (Doc. 129 at 6–7). Further, Nettleton contends that the Navy regulations allegedly imposing a duty to disclose were too vague to put him on notice of what he was required to disclose. Id.

Nettleton relies on United States v. Safavian, 528 F.3d 957, 964 (D.C. Cir. 2008) to argue that he was under no specific duty to disclose particular information. (Doc. 129 at 6). The defendant in Safavian, a high-ranking GSA employee, was convicted of violating § 1001(a)(1) for concealing facts when he omitted information in seeking an ethics opinion related to a trip and in a subsequent interview with the GSA inspector general about the trip. 528 F.3d at 963–64. The government argued that Safavian had a duty to disclose "by reference to . . . standards of conduct for government employees," which the D.C. Circuit described as "rang[ing] from exceedingly vague—'Employees shall put forth honest effort in the performance of their duties,' § 2635.101(b)(5)—to

4

somewhat more descriptive—'Employees shall not use public office for private gain[,]' § 2635.101(b)(7)." <u>Id.</u> at 964. In reversing Safavian's convictions, the D.C. Circuit stated: "We cannot see how this translates into criminal liability under 18 U.S.C. § 1001(a)(1) whenever someone seeking ethical advice or being interviewed by a GSA investigator omits 'relevant information.'" <u>Id.</u> The court further explained that due process requires "fair notice" of what conduct is prohibited and "[t]he ethical principles give no indication of the particular facts or information an executive employee must disclose. Nor do they suggest that they have any bearing on conduct during a GSA investigation or a request for an ethics opinion." <u>Id.</u> Further, the court rejected the government's argument "that once one begins speaking when seeking government action or in response to questioning, one must disclose all relevant facts." <u>Id.</u>

Nettleton's situation differs from that of Safavian. Unlike <u>Safavian</u>, where the ethical principles for government employees did not state specific information Safavian was supposed to disclose, Navy regulations required Nettleton to report the full situation involving Christopher Tur via an OPREP-3 Navy Blue message. Admiral Gray testified to this during trial:

> Q. [By the prosecutor]: . . . Admiral, within the Navy Region Southeast that GTMO is in, are there actual specific types of incidents that must be reported . . . by various Navy regulations and orders?
> A. [By Admiral Gray] Yes. There[] . . . are a couple of Navy instructions . . . . One of them . . . is a Navy instruction. It's called . . . operational reporting instruction. And that is a formal Navy

document that articulates those types of things that . . . if they were to occur, . . . you must notify the higher level chain – Navy chain of command, by voice, call within five minutes and then within an hour do a formal message documenting everything that you know, whether or not this incident is likely to garner media attention or . . . has international ramifications, that kind of thing.

(Doc. 105 at 103).[2] Additionally, Admiral Gray explained the types of situations that require an OPREP, that updates are required as more information becomes available, that the commanding officer is the final approver of an OPREP, and that the report must be truthful. Id. at 103–08. Specific situations requiring an OPREP include those likely to garner media attention, natural disasters, death or serious injury of someone within the command, misconduct by senior officers, and others. (Doc. 105 at 103–05). Moreover, Admiral Jackson and Admiral Gray both discussed the events that require a report under the Commander's Critical Information Requirements ("CCIR") and that Nettleton's reporting to them omitted required information. Id. at 103–10, 208–10, 215–25. Viewing the evidence in the light most favorable to the Government, the jury had sufficient evidence to find Nettleton guilty of violating § 1001(a)(1).

Further, that the jury acquitted Nettleton of Count Four—falsifying the OPREP Navy Blue—does not require acquittal on Count Three. Although the jury did not find that Nettleton knowingly altered, concealed, covered up,

_____

[2] The actual Secretary of the Navy Instruction was not admitted into evidence.

falsified, or made a false entry in the Navy Blue, the jury was authorized to find that he had a legal duty to report the information he withheld.[3] Thus, the jury could find that Nettleton did not personally participate in the creation, review, or approval of the incomplete Navy Blue—resulting in his acquittal for Count Four—but nonetheless still had the duty to report what he knew about Tur's disappearance. Additionally, the OPREP required a voice report before sending the official message. Admiral Jackson testified that because she did not have international calling capabilities on her phone, she considered Nettleton's email to her as satisfying the voice report requirement, (Doc. 105 at 218); in Count Five, the jury convicted Nettleton of falsifying that email.

### B. Motion for New Trial

Nettleton also moves for a new trial under Federal Rule of Criminal Procedure 33. His only argument warranting discussion is that the Court should have instructed the jury on Counts One, Two, Three, and Five that it had to unanimously determine which alleged acts Nettleton committed. (Doc. 130 at 1–3).

---

[3] Some courts have stated that the issue of whether there is a legal duty to disclose is a question for the court. United States v. Zalman, 870 F.2d 1047, 1055 (6th Cir. 1989) (citing United States v. Tobon–Builes, 706 F.2d 1092, 1097 (11th Cir. 1983)). Regardless if it is a question for the Court or the jury, the Government presented sufficient evidence to support this element.

Nettleton argues that the absence of an unanimity instruction deprived him of a fair trial because the indictment is duplicitous. Id. at 2. Despite filing many pretrial motions, see Docs. 31–36, Nettleton never asserted that the indictment was duplicitous. Under Federal Rule of Criminal Procedure 12(b)(3)(B)(i), a motion attacking an indictment as duplicitous should be raised pre-trial. However, a court can consider an untimely motion for good cause shown. In his motion, Nettleton does not even acknowledge that this argument is untimely, or attempt to demonstrate good cause for failing to raise the issue pre-trial. The Court could deny the motion on that ground alone. However, Nettleton did request a unanimity instruction for Counts One through Three pre-trial, and the Government has not raised a timeliness objection. Thus, the Court will address the issue on the merits.

The indictment in this case was a "speaking indictment." Unlike a more usual indictment that simply lists the defendant, the date of the alleged crime, venue, and a recitation of the elements, the indictment here contained fifty-nine factual paragraphs before alleging each crime. (Doc. 1). Moreover, each count contained a list of facts that the Government alleged constituted the crime. Id. Specifically, Counts One through Three each contained at least nine paragraphs detailing actions that Nettleton allegedly undertook that violated the statute. Id. ¶¶ 61, 63, 65.

Before trial, the Court granted Nettleton's Motion to Exclude the Indictment from Being Given to Jurors. (Doc. 45). When the parties proposed their jury instructions, the Government requested to include the factual paragraphs from the indictment listing Nettleton's alleged illegal conduct in the substantive instructions for Counts One through Three. (Doc. 55 at 6, 13, 18). Although differing slightly to conform to the language of each specific statute, Nettleton requested that the Court include in the substantive instructions for Counts One through Three: "If you do not unanimously agree as to what conduct the Defendant corruptly engaged in, you cannot find him guilty." Doc. 55 at 13 n.4 (requested for Count Two which requires the jury to find Nettleton acted corruptly); see also Doc. 55 at 6 n.2, 18 n.8. At the charge conference during trial, Nettleton also requested this instruction for Count Five. (Doc. 111 at 32). The Court denied the Government's request to include the factual allegations and Nettleton's request for unanimity instructions. See generally Doc. 126. The jury instructions for Counts One, Two, and Three used only the more general language from the indictment. Id. at 10–16. For example, the jury instruction for Count Two, instead of listing all the discrete acts the Government alleged, stated in part: "Count Two charges the Defendant with corruptly obstructing, influencing, or impeding official proceedings, that is, a Department of the Navy court martial, or attempting to do so, in violation of 18 U.S.C. §§ 1512(c)(2)." Id.

at 13. The instruction then listed the elements that the jury must find were proven beyond a reasonable doubt. Id. at 13–14.

In the general instructions applicable to all counts, the Court instructed the jury: "The Defendant can only be found guilty of a specific count if you unanimously find he violated all of the elements for that count." Id. at 22. Further, the Court instructed: "Your verdict, whether guilty or not guilty, must be unanimous – in other words, you must all agree." Id. at 23.

Thus, the case was tried as a scheme and pattern to obstruct justice, the jury was not given the list of alleged specific examples via the indictment or jury instructions, the jury was instructed that it must unanimously agree on each element, and jury found Nettleton guilty on Counts One through Three and Five. "[A]lthough a jury must decide unanimously that the government has proved each element of a crime, it need not agree unanimously as to which of several means the defendant used to commit each element." United States v. Williams, 785 F. App'x 692 (11th Cir. 2019) (Richardson v. United States, 526 U.S. 813, 817 (1999)).

Specific to Nettleton's argument for Count Five, the Government admitted only one email chain that the jury could find constituted a violation of 18 U.S.C. § 1519—Exhibit 359. (Doc. 127-73).[4] This email was to Admiral

---

[4] The Government introduced several other emails between Nettleton and Admiral Jackson. Exs. 377, 379, 381. Exhibit 377 was an email chain that

Jackson and had then-Captain Gray in the CC line. Id. Thus, there is no concern that the jury convicted Nettleton of Count Five for different emails to different people.

As given to the jury, Counts One through Three and Five were not duplicitous and the jury instructions were proper. He was not prejudiced by the Court's declination of his proposed unanimity instruction.

To the extent Nettleton seeks a new trial on any other ground, (Doc. 130 at 1), that request is denied.

Accordingly, it is hereby

**ORDERED:**

1.   Defendant John R. Nettleton's Motion for Judgment of Acquittal (Doc. 129) is **DENIED**.

---

Nettleton forwarded to Admiral Jackson regarding an inquiry from the Miami Herald. (Doc. 124-75). The Government's sole intention of introducing that email chain was to show that Nettleton was providing Admiral Jackson with truthful information certain times—the email about media inquiries (Ex. 377)—but withholding material information other times—his email initially reporting that Tur was missing that did not include information that Nettleton and Tur had fought inside Nettleton's home (Ex. 359). (Doc. 105 at 16–17). Further, no reasonable jury could conclude, and the Government did not argue, that Exhibit 379—an email from Nettleton to Admiral Jackson stating "We are good Ma'am, We had a good dinner with the secretary. Leslee is stressed a bit, did not mention the CR Inquiry ......."—could possibly form the basis for a violation of § 1519. (Doc. 124-76). The same also applies to Exhibit 381, an email from Nettleton to Admiral Jackson describing his wellbeing. (Doc. 124-77).

2. Defendant John R. Nettleton's Motion for New Trial (Doc. 130) is

**DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 11th day of May, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies:

Counsel of Record
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant